Frank E. Patterson, substituted Trustee for William H. Patterson, under the Will of General Robert Patterson, deceased, Appellant, *v.* Ziba VanLoon, Executor of the last Will and Testament of Grace A. Jessup, deceased.

*Principal and agent—Implied agency—Evidence.*

In establishing an implied agency deducible from a course of dealing between the parties, and from ratification of the alleged agent's acts, greater latitude is allowed in the admission of testimony tending to prove facts and circumstances from which the existence of the agency may be legitimately inferred than is allowed to prove an express agency.

If a person gives credit for money, collected by another who represented himself as the creditor's agent, and such alleged agent subsequently, in the same business, collects more money and fails to pay it over to the creditor. a jury may infer that the creditor had ratified the act of the person representing himself as agent, and he will be compelled to credit collections which such person makes and fails to pay over. In such a case the fact that the agent received compensation from the person paying the money would not prevent the relation of principal and agent between the agent and the creditor, if such was the mutual understanding.

*Debtor and creditor—Appropriation of payment—Mortgage.*

Where a mortgagor makes payments to an agent of the mortgagee, and specifically appropriates such payments on account of the mortgage, the mortgagee cannot in a suit upon the mortgage introduce in evidence a judgment held by the agent personally against the mortgagor to support a theory that the payments had been made on account of the judgment.

Argued April 12, 1898. Appeal, No. 99, Jan. T., 1898, by plaintiff, from judgment of C. P. Luzerne Co., March T., 1895, No. 139, on verdict for defendant. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage. Before LYNCH, J.

At the trial it appeared that the balance claimed was $1,500. The defendant introduced evidence which tended to show that the whole of this sum had been paid to M. Taylor, who was alleged to be the agent of the Patterson estate to receive such money. It was admitted that this money never reached the executors. Plaintiff alleged that the money which the defendant's testator had paid to Taylor had been paid on account of a

judgment which Taylor held personally against her. This judgment was offered in evidence, but was objected to as immaterial and irrelevant. The court sustained the objection, and sealed a bill. [15]

Other facts appear by the charge of the court which was as follows :

This is an action brought by the plaintiff upon scire facias issued upon a mortgage executed by Grace A. Jessup to the plaintiff, trustee of the Patterson estate, for $7,000 on April 11, 1889. The writ for the collection of the balance which is claimed to be due, issued February 26, 1895. Plaintiff now claims there is due from the defendant the sum of $1,500, with interest from October 11, 1893, at five and one half per cent, together with commission of five per cent for attorney's services upon the writ issued for the collection of said sum. The particular question is whether $1,500 is due the plaintiff, or has it been paid in full, as claimed by the defendant. The defendant contends that Mr. Taylor was the agent of the plaintiff for the purpose of collecting and paying over money due upon the mortgage in question ; whilst plaintiff contends that if Mr. Taylor was the agent of the plaintiff for the purpose of searching title, examining leases and some other matters, he was not its agent for the purpose of collecting upon the mortgage and not for the purpose of collecting and paying over to the plaintiff; that he was the agent of Grace Jessup. If Mr. Taylor and Mr. Moon had represented Grace Jessup in collecting and paying over to the Patterson estate, the Patterson estate should recover the amount claimed. It is equally as clear that if they were the agents in this particular for the Patterson estate, the Jessup estate should receive credit for all moneys properly paid into their hands. A general agent is one who is authorized to do all acts connected with a particular trade, business or employment; and a special agent is one authorized to do one or more specific acts in pursuance of particular specific instructions, or within restrictions necessarily implied from such instructions. There are many matters here not disputed ; in fact, there is very little dispute among the witnesses ; little difference in the testimony given.

The trustees of the Patterson estate, it appears from the evi-

dence, lived at the time in question in the city of Philadelphia. It seems that they had large sums of money to invest, and during a series of years they invested upon bonds and mortgages, in this and Lackawanna county, in the neighborhood of half a million of dollars. Mr. Patterson, as testified to by Mr. Bailey, was the acting or active trustee in Philadelphia. Mr. Bailey was the manager, as he testified, from August 7, 1881, to January 19, 1895, and as such had charge of accounts, was manager of all details pertaining to the office there. It does not appear that either Mr. Patterson, the active trustee, or Mr. Bailey, at that time, had been in this county supervising the placing of loans. The defendant asserts by the pleading that Mr. Taylor was the agent, in this particular, of the Patterson estate. It is, therefore, his duty to prove this clearly and specifically to your satisfaction. Agents may be appointed in many ways — by writing under seal, by writing without seal, or orally, and in the cases which most frequently come into court, the question of whether a person is the agent of another at a certain time, is to be determined by the conduct of the agent and of the alleged principal, and of the parties concerned in the transaction — by the conduct of all the parties, especially that of the agent with the knowledge of the principal or the alleged principal. There is no writing by which Mr. Taylor or Mr. Moon was appointed the agent of the Patterson estate. There are no specific, certain words, either oral or written, so far as I can call to mind, by which Mr. Patterson or Mr. Drayton, at that time, appointed or recognized Mr. Taylor or Mr. Moon as the agent of the Patterson estate. You will, therefore, have to gather the facts and decide the case upon the conduct of the parties concerned and the circumstances surrounding the case. Take into consideration where the trustee lived, the character of the business as shown by the testimony.

Mr. Taylor and Mr. Moon were lawyers with offices in this city at the time — at least at the inception of the proceedings and the loaning of the money. Grace Jessup wanted to borrow upon bond and mortgage security upon her property in Plymouth, $7,000, and made application either to Taylor or to the Patterson estate through Taylor, for this amount of money. Remember what Mr. Bailey stated, that Mr. Taylor was instructed to ascertain whether the loan was a safe one, to pre-

pare a brief and examine the title, to forward it to the home office, where the question was examined by Mr. Bailey and then submitted to Mr. Patterson, the acting trustee, and the matter was then referred back to Mr. Taylor with orders to use his own judgment as to whether the loan should be made or not; upon satisfactory evidence being submitted by Mr. Taylor to the trustee at Philadelphia, the mortgage was returned with instructions by the Patterson estate to Mr. Taylor to see that it was recorded. Upon this being done, a check for $7,000, which has been submitted in evidence, was sent payable to Grace A. Jessup. Even if Mr. Taylor were the agent of the Patterson estate for the purpose of examining titles upon which money was loaned, and informed the trustees at Philadelphia upon the subject, it does not by any means follow that he was the agent for the purpose of collecting money upon a mortgage. The check, it seems, was indorsed by the payee, Grace A. Jessup, and as I remember, the last indorser was N. Taylor, the person in question. Recall what became of at least part of the money. Two thousand was paid to one sister of Grace A. Jessup and $2,000 to another sister. On November 13 a release of the loan of the mortgage in question was prepared by Mr. Taylor, or in his office, at least, and sent to the home office at Philadelphia, releasing a part of the mortgaged property in favor of one Glovick, who was about to purchase or had purchased from Grace Jessup, for the sum of $2,500. At the time when the release was examined and returned with instructions to Mr. Taylor as to what he should do, or at least that the estate was willing to release upon payment of so much of the purchase money, it is claimed by the defendant that Grace Jessup paid $3,000 on the mortgage through Mr. Glovick who was the purchaser; that $2,500, only, was sent to the estate.

On or about May 27, 1891, the Ebenezer Baptist church of Plymouth purchased a part of the mortgaged premises; another release was prepared and sent to the home office in the same way, returned to Mr. Taylor. It is claimed that the whole of this sum, $1,000 then paid, was not sent to the home office, but kept by Mr. Taylor. On January 11, 1892, Mr. Bailey purchased another piece of the mortgaged premises from Miss Jessup, and a release of a similar nature was prepared, sent on and returned, and the sum of $2,000 was paid by Mr. Bailey. The

release was for $1,500. Mr. Bailey testified he then paid $2,000. It is claimed that Taylor, instead of sending exactly $2,500 in Glovick case, sent $2,526.25; in the church case, $1,152; in the Bailey case $1,522.70—a little more in each case than the release called for; and it is contended by the defendant, that, because the Patterson estate in each of these instances received from Mr. Taylor and Mr. Moon more than the release called for, it thereby acknowledged Taylor as its agent to collect this mortgage. There are some other matters, but the court is of opinion these are the principal items.

If the Patterson estate did not, either by word of mouth or writing, appoint Mr. Taylor its agent to collect upon the mortgage, did it so hold him out to the world and to Grace A. Jessup in particular, as to give her reasonable ground to believe he was acting for the Patterson estate? The fact that Mr. Taylor had appeared in many cases as counsel for the Patterson estate, had discontinued suits, had collected money upon other mortgages, had rented buildings for the estate, and had insured property for the estate as their agent, is not very material, perhaps not material at all, because it has not been shown that those acts were brought to the knowledge of Grace A. Jessup, or that she relied upon such acts. No matter what he did in these other matters, unless in some way brought to the knowledge of Grace A. Jessup—and it does not appear they were—then the Patterson estate ought not to be held in this particular, and Jessup's estate ought not to get the benefit of such an inference. [Considering the fact that Mr. Taylor was, in some respects, the representative of the Patterson estate in this county, do you believe it was the duty of the Patterson estate when it received sums beyond the amounts called for by the releases, and gave credit to Grace A. Jessup for those sums advanced through Mr. Taylor, to inform Grace A. Jessup that Mr. Taylor was not their agent, and that they would not be held responsible for money collected .from her by him? If a person permit another to collect money for him, representing himself as the agent, and give credit for such money, and that other, subsequently in the same business, collects more money and fails to pay over to the creditor, the jury would be authorized to infer that the creditor had ratified the act of the person representing himself as agent, and would

be bound by subsequent collections made by such person which he failed to pay over.] [16]

It appears to the court (but it is entirely for the jury to decide) that the principal matters for consideration are that the Patterson estate trustees were in Philadelphia; Taylor and Moon were lawyers here; the Patterson estate in this particular, at least, had no other representative here at the time; the Patterson estate received through Mr. Taylor and Mr. Moon more money at three different times than was due upon the releases or than they agreed to take and release the property purchased by the Baptist church, by Mr. Bailey and by Mr. Glovick. [If the evidence, gentlemen, clearly and specifically satisfies you that when Grace Jessup made the several payments upon the mortgage to Mr. Taylor and Mr. Moon, by the conduct of the trustees of the Patterson estate, she had reason to believe Taylor was the agent of the Patterson estate, and so believing, she made the payments, and Taylor failed to pay over, you will be warranted in saying that he was the agent of the Patterson estate and the plaintiff ought not to recover.] [17] If, however, it has not been clearly and specifically shown that Taylor was such agent or did represent the Patterson estate in this particular, she ought not to recover, and you should give a verdict for the amount claimed by the plaintiff. Or if you believe, gentlemen, from the weight of the credible evidence in the case that Mr. Taylor and Mr. Moon were acting for Grace Jessup in securing a loan for her from the Patterson estate, and subsequently Grace Jessup went to these men for the purpose of having them send the money for her to the Patterson estate, they were acting for her and not for the Patterson estate. If she selected her own attorney or her own agent and intrusted her business in his hands, and he misappropriated the money, the Patterson estate should not lose it. If the evidence shows that the Patterson estate selected this man as its agent and trusted him in this particular, and Grace Jessup trusted him as the agent of the Patterson estate, she should not lose the money so paid.

Defendant's point and the answer thereto among others were as follows:

1. The mere fact that N. Taylor and George W. Moon acted for Grace A. Jessup, and received their compensation from her,

does not prevent the relation of principal and agent between those men and the trustees of the R. E. Patterson estate, if such were the mutual understanding. *Answer:* Affirmed. [21]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (15) ruling on evidence, quoting the bill of exceptions; (16, 17, 21) above instructions, quoting them.

*William S. McLean* and *E. Clinton Rhoads*, with them *William Raeder* and *H. T. Dechert*, for appellant.—The party who avails himself of an act of an agent must, in order to charge the principal, prove the authority under which the agent acted: Langenheim v. Anschutz-Bradberry Co., 2 Pa. Superior Ct. 285; Whiting v. Lake, 91 Pa. 349; London Saving Fund Society v. Hagerstown Savings Bank, 36 Pa. 498; Moore's Executors v. Patterson, 28 Pa. 505; Hays v. Lynn, 7 Watts, 524; Peoples' Bank v. Gailey, 92 Pa. 518; 1 Am. & Eng. Ency. of Law (2d ed.), 987.

Agency cannot be proved by the declaration of an alleged agent or by his acts done without the knowledge and authority of the principal: Pepper v. Cairns, 133 Pa. 114; Gass v. Citizens' B. & L. Assn., 98 Pa. 101.

Possession of securities by an attorney, in the absence of proof aliunde of express authority, is the indispensable evidence of his authority to collect the principal: Bryant v. Hamlin, 3 Dist. Rep. 385; Phila. Trust Co. v. Roberts, 14 W. N. C. 123; Crane v. Grunewald, 120 N. Y. 274; Taylor v. Vingert, 33 Legal Int. 238; Phila. Trust Co. v. Roberts, 14 W. N. C. 123.

Wherever agency is based upon a written instrument it must be strictly pursued, and whoever deals with an agent constituted for a special purpose, deals at his peril when the agent passes the precise limit of his power: Campbell v. Foster Home Assn., 163 Pa. 609; Wilson v. Wilson Rogers, 181 Pa. 80; Needles' Est., 4 Dist. Rep. 762.

There can be no such thing as ratification where it is not shown that the agent professed to act for the principal, and that the principal had knowledge of the act supposed to be ratified: Zoebisch v. Rauch, 133 Pa. 532; Wilson v. Wilson Rogers, 181

Pa. 80 ; Henry Christian Building & Loan Assn. v. Walton, 181 Pa. 201 ; Twelfth St. Market Co. v. Jackson, 102 Pa. 269.

*D. L. Creveling,* with him *E. A. Lynch* and *J. Q. Creveling,* for appellee.—The rule laid down in this Court in Muh v. Bardinger, 18 W. N. C. 112, is decisive of this case.

In all cases where an authority of an agent, whether general or special, is to be implied from the conduct of the principal, or where the medium of the proof of agency is per testes, the jury are to judge of the credibility of the witnesses, and of the implications to be drawn from their testimony, and it is error for the court to decide the point as matter of law : Loudon S. Fund Society v. Hagerstown Savings Bank, 36 Pa. 498 ; Berger's App., 96 Pa. 443.

It is a clear principle of equity that where a man stands by and knowingly suffers another person to do acts in his own name without any opposition or objection, he is presumed to have given authority to do these acts : Story's Agency, sec. 89 ; Phila., Wil. & Balt. R. R. Co. v. Cowell, 28 Pa. 329 ; Lawall v. Groman, 180 Pa. 532 ; Building & Loan Assn. v. Real Est. Title Co., 156 Pa. 181 ; McMahon v. Bardinger, 18 W. N. C. 112.

PER CURIAM, May 30, 1898 :

In the court below, this case involved a question of implied agency deducible from a course of dealing between the parties, and also of ratification of the alleged agent's acts. The evidence necessary to establish such relation is very different from that required to prove an express agency. In the former greater latitude must necessarily be allowed in the admission of testimony tending to prove facts and circumstances from which the existence of an agency may be legitimately inferred. From the nature of the case, evidence that would tend to prove an implied agency, or subsequent ratification, would be inadmissible as proof of an express agency. Without referring to the assignments of error in detail, this is a sufficient answer to several of the specifications relating to the admission of evidence.

Plaintiff's offer,—referred to in the fifteenth specification,—to show a judgment, held by Taylor, the alleged agent, to which payments not remitted to the plaintiff might have been applied, was properly excluded. All the payments made by defendant's

testatrix were expressly appropriated to the plaintiff's security, and it would not have advanced the case to show that there was another debt to which the payments might have been, but were not appropriated.

The evidence properly before the jury fully justified the learned trial judge in charging as set forth in the sixteenth and seventeenth specifications: and that part of the charge was a fair presentation of the defendant's case. The plaintiff's case had been presented with equal fairness in other portions of the charge.

Plaintiff's requests for instructions could not have been affirmed without withdrawing the case from the consideration of the jury. That, under the evidence before them, would have been manifest error. Defendant's first request is framed substantially in the language of this Court in Lawall v. Groman, 180 Pa. 532, 539, and was not unwarranted. His remaining points were rightly affirmed. The case involved questions of fact which were clearly for the jury; and they were fairly submitted with instructions which appear to be adequate and free from substantial error. Further elaboration is unnecessary.

Judgment affirmed.