Burkhart, Appellant, *v.* Falco et al.

Argued November 13, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Daniel B. Strickler,* for appellant.

*F. Lyman Windolph,* of *Windolph & Mueller,* for appellee.

OPINION BY STADTFELD, J., February 1, 1935:

Plaintiff, holder of a bond and mortgage, dated March 3, 1928, entered judgment on February 10, 1934, on the bond against defendants, the mortgagors, in the penal sum of $2,400 to secure the payment of $1,200, with interest thereon at the rate of six per cent. The bond is a bond accompanying a mortgage of like amount and date, duly recorded in the Recorder's Office of Lancaster County, secured upon premises known as No. 546 Beaver Street, Lancaster. Mary Falco, of defendants, is the divorced wife of Antello Falco, the other defendant, and has no further interest in the matter. Antello Falco, alleging that he had fully paid all principal and interest, due on said mortgage and bond accompanying the same, to John N. Hetrick, who, he averred, acted as plaintiff's agent and attorney, petitioned the court below for a rule upon plaintiff to show cause why the judgment should not be opened. The answer avers that the said John N. Hetrick was not authorized to receive any money from the petitioner, and was not authorized to act as agent and attorney of Merle R. Burkhart, plaintiff. Depositions were taken on behalf of plaintiff and defendants. The court made the rule absolute and framed an issue upon the question of Hetrick's agency for submission to a jury. Plaintiff appealed.

The facts are not in dispute and were fully brought out in the depositions taken on the rule to show cause. The defendant, beginning February 2, 1925, paid into the law offices of John N. Hetrick the sum of $3,349.44

to apply upon $900, part purchase price of the property upon which the mortgage is secured, $1,200, the principal of the mortgage in question, the regular semi-annual installments of interest thereon, as well as on account of the purchase price of a lot not herein involved, and a loan of $200 made from the said Hetrick.

Title to the said property became vested in the defendants in the year 1928, and by subsequent deeds was transferred to Antello Falco, also known as Lewis Falco, individually. He first lived in the property in the year 1924, at which time it was owned by a man named Jim Paparo, and was subject to a first mortgage for $1,200 held by plaintiff. On or about February 2, 1925, an agreement was entered into between Paparo and Falco, whereby the latter agreed to purchase the property for $2,100. The terms of this agreement were that Falco was to pay the taxes on the property, interest on the purchase price, and $25 per month until the latter payments equaled $900, at which time he was to receive a deed for the property. Previous to the time the agreement was made, Paparo had been acquainted with John N. Hetrick, a member of the Lancaster County Bar, and at or about the time the agreement was made he introduced Falco to Hetrick and instructed Falco to make the specified payments to Hetrick. By the latter part of the year 1927, Paparo had received his equity of $900, and on March 3, 1928, he conveyed the property to Falco and his wife in accordance with the terms of the agreement. On the same date, the purchasers gave to Burkhart the bond on which judgment was afterwards entered against them, and a new mortgage to replace the existing $1,200 mortgage which Burkhart then held. Since the amount of the new mortgage was the same as that of the old one, no money actually passed at the time the transaction was completed, and the only

change in the situation was that Burkhart became the holder of the Falcos's bond and mortgage, instead of Paparo's bond and mortgage, on the same property and for the same amount.

After the giving of the new mortgage, Falco paid the taxes on the property and continued to pay to Hetrick interest and $25 per month on account of the principal. He subsequently borrowed, through Hetrick, additional sums of $200 and $500, the latter amount representing the purchase price of a lot adjoining the house. The $200 loan is represented by a judgment also held by Burkhart, but Falco did not meet Burkhart in the course of either transaction, and never saw him until the day on which depositions were taken on the rule to open the judgment. At the taking of the depositions, Falco produced a receipt book which shows that between February 2, 1925, the date on which the agreement with Paparo was made, and October 7, 1933, he paid Hetrick the sum of $3,349.44. An account prepared by Hetrick shows the application of Falco's payments to interest and principal. This account indicates that as of October 1, 1931, Falco owed a balance on the principal of the $1,200 mortgage amounting to only $150, in addition to the $200 judgment and the $500 loan representing the purchase price of the Beaver Street lot. Subsequent to that date, payments amounting to $669.90 were made.

During all of this time Hetrick, the attorney, paid the full interest amounts to plaintiff, but did not turn over any of the principal sums nor inform him that he had received any of the moneys to apply upon the same. In the fall of 1933, Hetrick got into financial difficulties and shortly thereafter the plaintiff and defendant learned for the first time of his embezzlement.

The defendant concedes that he made the principal payments to Attorney Hetrick, solely for the reason that he had all his dealings with him, and because he

was told to do so by Paparo, former owner of the premises. He admits that he signed the bond and mortgage, agreeing to pay the plaintiff, but that he did not know plaintiff had the money in his property; that he never made any effort to learn if Hetrick had any authority to receive the principal payments; that he made no effort to inquire if Hetrick had possession of the securities, and never made any effort to find out if the payments had been properly remitted; that he never asked Hetrick, or the plaintiff, to receipt the record of the mortgage.

The plaintiff denied that he ever gave Attorney Hetrick any authority to collect any of the principal of this mortgage. He never knew the defendant; took his mortgage for twelve hundred dollars ($1,200) on a request from Hetrick for the investment; did not employ Hetrick, or pay him anything for services in collecting the interest; knew nothing about the paying of the principal by Falco to Hetrick until the fall of 1933, and Hetrick never turned over to him anything but the full amount of the interest when the same became due on semi-annual dates. Plaintiff kept possession of his securities at all times. He let Falco have the money as long as he paid the interest and never made any demand on him to pay any of the principal. The full amount of principal with interest from April 1, 1933, is due and owing plaintiff.

The plaintiff was employed by Attorney Hetrick as a clerk and notary public in his office between the years of 1911 and 1917, and during that time, as clerk, had received payments of interest and principal for Mr. Hetrick on account of other peoples' mortgages.

While he was employed by Hetrick, in some instances mortgages representing investments of plaintiff's money (other than the Falco mortgage) were reduced by payments to Hetrick and turned over to plaintiff by cash or check of Hetrick. After his em-

ployment ceased he did not become a client of Attorney Hetrick nor pay him anything for services.

Appellee having averred, as an essential feature of his case, that Hetrick was plaintiff's agent to receive the payments of principal which he made, the burden of proving that agency rested on him: Lewis v. Matias, 300 Pa. 238, 150 A. 636; Pore v. Duke, 303 Pa. 528, 154 A. 797. The evidence failed to establish this fact. It fails to disclose any authority to collect the principal. In fact defendant admitted that he made no arrangements or agreement with Mr. Burkhart; that Mr. Paparo told him in the first place to pay Mr. Hetrick. For over five years defendant paid various sums on account of principal, as also paid all interest due; during all this time Hetrick sent to plaintiff his own checks for the amount of interest, but never informed him in any way of his collection of principal. It cannot be argued therefore that Hetrick possessed express authority to receive this money. While in collecting and remitting interest every six months, Hetrick may have acted for appellant, this did not empower him to collect principal, nor authorize defendant to pay him as agent. A mortgagor is held to a very strict rule to show agency when he undertakes to justify paying the amount due on a mortgage to a third person.

Plaintiff here testified that "in some instances" Hetrick collected payments on account of principal on mortgage loans which he had made to other mortgagors on his behalf. This was during his term of employment by Hetrick between 1911 and 1917. It is argued that this testimony brings the case within the doctrine of Patterson v. VanLoon, 186 Pa. 367, 40 A. 497; Colonial Trust Co. v. Davis, 274 Pa. 363, 118 A. 312; Williams v. Cook, 289 Pa. 207, 137 A. 232, and Dobbs v. Zink, 290 Pa. 243, 138 A. 758, that the authority of an agent to perform an act may be estab-

lished by evidence of the principal's acquiescence in a series of similar acts by the agent.

The questions discussed, supra, were considered in two cases in the Supreme Court, arising from embezzlements of the same attorney, under similar circumstances, in which opinion were filed on January 7, 1935, by Mr. Justice DREW: Anna M. Judith, Appellant, v. Joseph Dicola et al., 317 Pa. 353, 176 A. 238, and Anna R. Brientnall, Appellant v. Margaret L. Peters, 317 Pa. 356, 176 A. 240. Quoting from the latter opinion: "The rationale of the doctrine is that the approval by the principal of a series of acts by the agent ·may give rise to a reasonable inference of authority to perform other acts of the same kind: see Restatement, Agency, section 43, comment b. It is obvious, therefore, that the acts must be so repeated and so connected in point of time as to be capable of giving rise to such an inference. ...... Whether there were two such instances, or two dozen, is not shown by the testimony, and it is equally silent as to when they occurred. ...... Certainly such a situation would not be enough to give rise to a reasonable inference of a general agency on the part of Hetrick to collect the principal of mortgage loans placed by him for plaintiff. It must not be forgotten that the burden was upon defendant to prove such agency, and that it was the essential feature of her case. The proof falls far short of evidencing a course of dealing from which authority to collect principal could reasonably be inferred."

When appellee paid Hetrick the principal he did so at his own risk. He did not ask him to produce the documents; in fact, Hetrick did not possess them. He could easily have protected himself by demanding to see the mortgage and bond. He cannot penalize appellant for this omission on his own part. On him rests the blame for creating the situation which per-

mitted Hetrick to appropriate the funds. On him must fall the loss. Where one of two innocent persons must suffer loss by reason of the fraud of another, the loss must fall on him by whose act the wrongdoer has been enabled to commit the fraud: Froio v. Armstrong, 277 Pa. 18, 120 A. 693; Bair's Assigned Estate, 20 Pa. Superior Ct. 85. For a full discussion of the principle involved, see opinion by Mr. Justice KEPHART in Walter Mielcuszny et ux. v. Adam Rosol et ux., in the Supreme Court, 317 Pa. 91, 176 A. 236.

Hetrick was the cause of appellee's loss, and much as we may sympathize with him, we are bound by the rules of law to which we have referred. It follows that the order of the court below must be reversed.

The assignments of error are sustained and the rule to open the judgment is dismissed; costs to be paid by appellee.