Messmer et ux., Appellants, v. McLaughlin.

Argued March 5, 1936.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*William A. Valentine,* with him *Jonathan C. Valentine,* for appellants.

*A. L. Turner,* of *Jenkins, Turner & Jenkins,* for appellee.

OPINION BY CUNNINGHAM, J., July 10, 1936:

This is an appeal from an order opening a judgment in the amount of $2,000 entered upon a bond secured by a mortgage. In her petition, defendant averred she had paid the sum of $1,600 on account of the principal of the mortgage, payment having been made in nine instalments to Roger J. O'Donnell, a former member of the Luzerne County Bar, who, she alleged, was agent

for the plaintiffs. It was admitted that the sum of $400 was still due. In their answer, plaintiffs admitted having received $400 from defendant through O'Donnell, but denied that O'Donnell was their agent or had at any time been authorized to receive payments on account of the principal.

The sole issue, therefore, was whether O'Donnell, who admittedly received from defendant $1,200 which he failed to pay to plaintiffs, collected this money as agent for the latter.

Depositions were taken, after which the court first discharged the rule; but upon reargument it was made absolute, whereupon this appeal was taken by the plaintiffs.

Appellants ask us to convict the court below of an abuse of its discretion in opening the judgment. This requires us to summarize briefly the testimony submitted in the form of depositions.

The testimony of the appellee herself is of little value upon the present issue. She stated she needed the sum of $2,000 to complete the purchase of a property from her father-in-law's estate. O'Donnell was counsel for the estate. In the course of the negotiations, O'Donnell told her he could obtain the money for her, and subsequently did. She paid the interest to O'Donnell regularly, and at various times upon his request made payments totaling $1,600 on the principal, in each instance taking his receipt or that of some member of his office. She testified O'Donnell was not her agent in this transaction, but she had paid the money to him because he obtained the mortgage. She said she had not given serious thought to the transaction, although she realized at some point that the money had ultimately come from plaintiffs. She further stated O'Donnell had never acted as her attorney prior to the loan, nor subsequent thereto, except that in one instance he had suggested to her that he should prepare her will.

O'Donnell testified as follows: He had told appellee at the time the purchase of the property was under consideration that he could obtain the necessary funds from a client. He did obtain the money from appellants and had the mortgage executed in his office. Messmer had authorized him to collect the principal on all of the mortgages held by the appellants, under a standing arrangement between them; and he had received payment of each instalment in this case as agent for the appellants. He had been attorney for Messmer for a number of years, during which time he had been frequently consulted on legal matters, but principally in regard to the loaning of appellants' funds. During this time he had placed about eight mortgages for them, receiving the funds in each instance in the form of a check drawn to his own order or that of himself as attorney. This testimony was amplified somewhat on cross-examination. O'Donnell said he had asked Messmer if the latter had $2,000 to loan on a mortgage, explaining to him the nature of the property and the identity of the proposed mortgagor. He did not, he said, tell Messmer appellee was a client of his, but on the contrary considered he was representing Messmer. He further stated that while he had no written authorization, Messmer came to him frequently and asked him to force collections on outstanding loans, stating that in view of the depression in real estate he wanted the principal on his mortgages reduced, and instructed him to insist upon periodic payments of principal as well as interest.

Messmer himself flatly denied this testimony. He stated that O'Donnell had said he represented appellee in obtaining the loan; that O'Donnell had acted as his attorney in only one other deal, unconnected with real estate; and that O'Donnell had come to his house many times on similar transactions, in each instance requesting funds for other persons. He did admit he had asked O'Donnell, from time to time, "Why the people don't

pay me," and said O'Donnell had assured him he represented the mortgagors and that Messmer would get his money. He insisted there was no understanding between them as to the collection of principal. He admitted receiving payments on account of the principal of the mortgage in question, from O'Donnell, on four dates: May 1927, November 1927, May 1928, May 1929 —in all $400.

Two letters from O'Donnell to Messmer were also introduced by appellants. These read as follows:

"November 9, 1933

Mr. Conrad Messmer
Wilkes-Barre, Pa.
My dear Sir:

Enclosed please find check for $48.00 interest on $1600.00 balance on Sarah McLaughlin mortgage from May 1st to November 1st, 1933. I didn't get to Freeland on Wednesday and I had to go to Hazleton today. I will get the other interest, except the Beard for you in a few days. I am working on the Beard case and will get a report shortly.

Sincerely yours,
Roger O'Donnell."

"Mr. Conrad Messmer
Wilkes-Barre, Pa.
My dear Sir:

Enclosed please find check and statement for interest as follows:

| | |
|---|---:|
| Sarah McLaughlin, $1600.00 interest from November 1st 1933 to May 1st, 1934 ........... | $ 48.00 |
| John Hotchkiss, October 4th, 1933 to April 4, 1934 ................................ | 54.00 |
| John Hotchkiss Int. on $54.00 from April 4, 1934 to May 4, 1934 ...................... | .27 |
| Total ................................ | 102.27 |

"You will get the Meehan interest not later than Mon-

day which will pay up all the interest and I am getting the Meehan-Hotchkiss matters off your hands. I did not get to Freeland yesterday on account of being held up here. You can depend upon what I am telling you. I will see to it that you are not out one cent on anything I ever did for you. Thanking you for your kindness, I am,

Very truly yours,

R. J. O'Donnell"

Messmer was corroborated as to a portion of his testimony by his daughter and his son, but they were not familiar with this particular transaction.

While upon this testimony the case is concededly a close one, we are of opinion that the court below did not commit such an abuse of discretion in opening the judgment as to warrant us in reversing that action, and by so doing deprive appellee of an opportunity to have the matter passed upon by a jury. It is true, as appellants argue, that in cases of this general sort the burden rests upon the mortgagor to prove that the payments were made to an agent of the mortgagee authorized to collect principal, and not merely interest, as in Peters v. Alter, 89 Pa. Superior Ct. 34; that the burden is not a light one; and that the judgment should not be opened where the evidence is merely oath against oath. These principles are sound, and are clearly stated in the cases hereinafter cited.

On the other hand, the question is peculiarly one requiring the exercise of a sound discretion by a chancellor. The hearing is not a final one; if the judgment is opened, the mortgagor must still sustain his or her position before a jury. Therefore, even though we might have reached, independently, a different conclusion, we should not disturb the order appealed from unless it violates some positive rule of law.

Appellants assert that the order is definitely contrary to certain controlling and well-established decisions. An

examination of them, however, does not indicate they are really analogous to the present case. In Mielcuszny v. Rosol, 317 Pa. 91, 176 A. 236, there was no evidence offered to show that the alleged agent of the mortgagee had been authorized to collect principal. It was merely decided that such authorization could not be inferred from the collection and remittance of *interest*. Other general language in that decision has no controlling effect upon the case now at bar.

Judith v. Dicola, 317 Pa. 353, 176 A. 238, was another case in which the evidence indicated that the attorney involved was given authority to collect interest, but it was silent as to the collection of principal. The one additional element was the testimony of one of the mortgagors that the attorney had given instructions that the principal of the debt be paid to him. Since it is clear that the authority of an agent cannot be established by proof of his own representations or declarations made out of court, this added feature was of no significance.

Brientnall v. Peters, 317 Pa. 356, 176 A. 240, was a case which went one step farther. The mortgagee there testified that in some cases the attorney had collected and she had accepted payments of principal on mortgage loans which he had made to various mortgagors. The evidence, however, was silent on the number of such instances or the dates upon which they occurred. It was shown that the placing of mortgages by the attorney had extended over a period of some twelve years. Consequently, it was held that these meagre facts were not sufficient to give rise to a reasonable inference of a general agency on the part of the attorney to collect the principal of all mortgage loans placed by him for the mortgagee.

These cases, in our opinion, do not present an insuperable bar to the relief granted the appellee. The evidence here does not consist merely of proof of representations made by the alleged agent. On the contrary,

O'Donnell himself testified on the stand that he was agent to collect principal. His testimony, if believed, is competent to establish that fact. He further testified as to the existence of a relationship of attorney and client in numerous transactions, which, while of no significance in itself, may be considered as adding weight and credibility to his other utterances. It is true that Messmer himself flatly denied all of O'Donnell's statements; and if there was nothing more in the case, the testimony of the latter might not be sufficient to warrant the opening of the judgment.

The court below, however, did not base the exercise of its discretion upon O'Donnell's testimony alone, but, as the opinion on reargument shows, was influenced by the further fact of the collection and remittance of four instalments of principal. We agree with the court below that this factor was a proper one to throw into appellee's side of the scales.

Authority to perform a certain act for another does not necessarily have to be established by testimony as to express words of authorization from the principal. It may, under certain circumstances, be inferred from a definite course of dealing, undertaken by the agent and accepted by the principal. This rule is based upon the theory that known actions, if not explained away, may be consistent only with a principal-agent relationship. Consequently, it is permissible to imply the authority of an agent to collect the principal of a mortgage from such facts as that he had previously received and receipted for payments on account of principal and that his acts had been approved and ratified by the mortgagee: Patterson v. Van Loon, 186 Pa. 367, 40 A. 495; Williams v. Cook, 289 Pa. 207, 137 A. 232. In the latter case it was said (p. 213) : "If a mortgagee gives credit for money, collected by another who represented himself as the mortgagee's agent, and that other subsequently, in the same business, collects more money and

fails to pay it over to the creditor, it may be inferred. that his conduct in so receiving was authorized."

The case of Brientnall v. Peters, supra, recognized the general principle that the authority of an agent to perform an act may be established by evidence of the principal's acquiescence in a series of similar acts by the agent. The court pointed out, however, that the acts must be so repeated and so connected in point of time as to be capable of giving rise to such an inference, and held in that particular case that the necessary elements were not present. Here, on the contrary, we think agency might reasonably be inferred. The times and amounts of the payments on account of principal are known; the payments were made in close sequence; and they were intended to reduce this very mortgage. These are far more definite indications of an accepted course of dealing than were presented in the case cited and relied upon by counsel for appellants.

They also refer us to Borland v. Wible et al., 94 Pa. Superior Ct. 41. There the mortgagor sought to imply agency from a number of checks drawn to the order of the mortgagee for various sums over a period of six years, all designated for "interest" excepting two. The following quotation from the opinion shows how indefinite a basis was there laid for the inference sought to be drawn (p. 44): "In the first the words 'share principal and interest' and the second, 'principal' are found. These two checks among so many extending over a long period are a slim foundation upon which to base a course of conduct and thus confer upon Wegley a right to collect the principal of the mortgage in question. We know not the particulars of the transactions involved in said checks, the first check seems to have concerned a partial ownership in the mortgage. As to the second, how Wegley figured in the transaction, does not appear. He may have acted for the mortgagor. A course of conduct cannot be inferred from two such in-

stances among so many without giving the circumstances surrounding them, showing ratification."

In the present case, the checks are closely connected, relate to a known transaction, and are supported by the testimony of the alleged agent.

For these reasons, we have concluded the order should be affirmed. We are not to be understood as giving conclusive weight to any one of the several items of evidence, certain of which may have only minor significance in themselves, but have considered all of the evidence which, taken together, is sufficient in our opinion to justify a chancellor in recognizing the need for a further and more formal inquiry into the actual facts.

Order affirmed at costs of appellants.