## Mitchell, Appellant, *v.* First National Bank of Confluence.

Argued April 12, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Budd B. Boose,* for appellant.

*Joseph Levy,* for appellee.

OPINION BY PARKER, J., July 13, 1939:

Earl M. Mitchell brought suit against the defendant bank to recover for the loss of certain federal savings bonds which were alleged to have been taken by an unauthorized person from a safe-deposit box rented by defendant to plaintiff. The issues raised by the pleadings were submitted to a jury which found for the defendant. Judgment having been entered for the defendant the plaintiff has appealed assigning as errors the refusal of plaintiff's request for binding instructions and the subsequent motion for judgment n. o. v., rulings on the admission of testimony and statements in the charge to the jury. The judgment must be affirmed.

In connection with its banking business, defendant maintained and rented for a consideration safe-deposit boxes arranged in its vault. To gain entry to the boxes required two different keys, one of which was retained by the bank and the other with a duplicate was delivered to the customer. In 1934 the defendant rented to the plaintiff box No. 157 and plaintiff received two duplicate keys for which he paid at the rate of $1.10 per year. There was no written contract between the parties and the bank had not promulgated rules governing the use of the boxes. It did not keep a written record of the persons who were permitted to have access

to the boxes by the use of the key retained by the bank and the one delivered to the customer. Those facts are admitted by all.

The plaintiff alleged that about October 31, 1936, he placed in the box so rented five United States Savings Bonds having a total value of $1537.50 which bonds were registered in the name of "Earl M. Mitchell or Nancy Mitchell" but were the property of plaintiff; that about March 8, 1937, the defendant permitted an unauthorized person, Nancy Mitchell, wife of plaintiff, to have access to the box; that she secretly removed the bonds therefrom; and that she subsequently converted the bonds into cash and he has been unable to recover the proceeds. At the trial he testified to these facts and particularly that he opened the box in January, 1937, and the bonds were still there when he closed it and that on examining the box on March 8, 1937, the bonds were gone. It was admitted that the bonds were subsequently cashed by his wife and that the rules of the Treasury Department permitted either party named to receive the proceeds.

The defendant denied that the bonds had been placed in the box by the plaintiff or were the exclusive property of plaintiff and averred that plaintiff had authorized his wife to have access to the safe-deposit box. On trial defendant admitted that the wife had on frequent occasions been permitted to enter the box, but offered testimony tending to show the authority of the wife so to do and also offered some evidence tending to show that the bonds were not plaintiff's exclusive property.

The relationship between the plaintiff and defendant was that of bailor and bailee (*Reading Trust Co. v. Thompson*, 254 Pa. 333, 337, 98 A. 953; *Trainer v. Saunders*, 270 Pa. 451, 452, 113 A. 681), and since there was no formal contract between the parties, their mutual rights and responsibilities were to be determined in the first instance by the law of bailments. Since the evidence in the present case did not stop with merely

showing the loss, but plaintiff showed facts from which the reasonable inference was that the bonds were abstracted by Nancy Mitchell, a third party, entering the vault and opening the box by means of one of the keys delivered to plaintiff with the consent of the defendant by operating the key retained by it, the burden was shifted to the defendant to show that plaintiff had authorized Nancy Mitchell to open the box if it was to have advantage of that defense: *Safe Deposit Co. v. Pollock*, 85 Pa. 391, 394.

It will be readily seen that the real controversy narrowed itself to two matters, that is, as to whether the plaintiff did leave the bonds in safe-deposit box No. 157 and, if so, whether the plaintiff authorized his wife to have access to that box. It being admitted that the wife did have access to the box and was later in possession of the bonds and cashed them, then if the bonds were in the box at the times alleged by plaintiff, the only reasonable inference is that she took them from the box. If the bonds were left in some other place by plaintiff and his wife found them there and converted them then the defendant would not be liable.

The burden was on the plaintiff to show that he had placed the bonds in the safe-deposit box for otherwise he could not show a loss due to any fault of defendant. As proof of that fact depended exclusively on the oral testimony of plaintiff a pure question of fact was presented and that question was for the jury even though his testimony had not been contradicted: *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236, 238, 163 A. 523. That alone was sufficient to require the court to refuse plaintiff's request for binding instructions in his favor and the subsequent motion for judgment n. o. v.

The testimony of the defendant and the admissions of the plaintiff as to the agency of Nancy Mitchell for her husband were sufficient to take that question to the jury. We are required to view the testimony in a light most favorable to the defendant and resolve all reason-

able inferences in its favor in considering whether judgment should now be entered for the plaintiff n. o. v.

Plaintiff's oral testimony was to the effect that the bonds were in the box in January, 1937, and they were gone on March 8, 1937. He testified that his wife deserted him finally on March 9, 1937; that she did not return and that she died on June 6, 1937. He stated that the bonds were his property although registered in the name of Earl M. Mitchell or Nancy Mitchell and that he never authorized his wife to enter the box and did not know she had done so until he discovered the absence of the bonds the day before she deserted him.

The defendant called its cashier as a witness and he testified that the mother of Mrs. Mitchell had died in Ohio in December, 1936; that in February, 1937, plaintiff asked him whether United States Savings Bonds registered in two names could be cashed by either party and that the witness replied that he could not answer the question and referred plaintiff to the post office for information. Plaintiff then told the witness that since the death of his wife's mother, she had been staying in Cleveland and felt it her duty to take care of her father, but that he and his wife had not had any differences. We cite additional testimony of the cashier: "He said, 'I just can't understand why she isn't coming back'. I then said, 'Well, Bud, you know your wife has been coming here and we have been giving her access to the safe-deposit box', and I said, 'is that all right?' and he said, 'yes, that is all right.' "

It was also shown by cross-examination of plaintiff and by the testimony of the cashier and another employee of the bank that the personal relations between plaintiff and his wife were harmonious; that she had kept boarders; that Mrs. Mitchell frequently transacted business with the bank on behalf of her husband and on their joint account; that they carried their savings in a joint account in defendant bank and had joint accounts in the County Trust Company and in Postal

Savings; that she frequently came to the bank with a bunch of keys, including the key to the safe-deposit box and was allowed access thereto; that the plaintiff had no negotiable securities in the box except such as were registered in their joint names. We also quote from the cross-examination of plaintiff: "Q. And what money she earned and what money you earned went to pay the bills and the balance went in the savings account? A. Yes, sir."

Now, the question in issue was not, as plaintiff suggests in his brief, whether plaintiff in his conversation with the cashier in February, 1937, ratified the removal of the bonds, but whether the plaintiff had authorized his wife to have access to the box. His statements to the cashier, which the jury accepted as verity, indicated that he had given such permission which applied to the past as well as the future and the circumstances shown indicated that the relationship of principal and agent was a natural one to be expected. The evidence was competent for the purpose of showing that such relationship was one naturally to be expected particularly when the property in the box having intrinsic value was in their joint names. The facts stated raised another clear issue of fact which was for the jury.

That the relationship of principal and agent does not arise from the marital relationship is well settled: *Rodgers v. Saxton,* 305 Pa. 479, 484, 158 A. 166. "The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts, or conduct clearly implying an agency": 2 C. J. p. 440, quoted with approval in *Rodgers v. Saxton,* supra; but such relation is competent evidence when considered with other circumstances as tending to establish the facts of agency and when there has been other competent evidence tending to the same end. See 2 C. J. S. Agency, §23(c).

While some objection is made in the argument to

the admission of certain testimony, no particular rulings on objections have been assigned as error. However, the argument concerns the admission of evidence with reference to the circumstances to which we have just referred and the evidence was clearly competent.

We find no merit in the assignment of error which complains of a part of the charge of the court. The complaint is not that the court incorrectly stated the law but that the trial judge discussed the duties and liabilities of a bailor when the real issue was confined to the questions which we have heretofore indicated. Counsel for the plaintiff submitted a number of points, all of which were affirmed except one asking for binding instructions in favor of the plaintiff. In those points counsel dealt with the liabilities of a bailor and what the court said in his general charge was but an amplification of the subject brought up by the points. The only exceptions taken to the charge were a general exception and an exception to the refusal of the point for binding instructions. If counsel desired further instructions he should have so requested the court at the conclusion of the charge and specifically called the court's attention to the matters as to which he desired further instructions.

Judgment affirmed.