### Yezbak *v.* Croce, Appellant.

264

Argued March 26, 1952. Before Drew, C. J., Stearne, Jones, Bell, Chidsey and Musmanno, JJ.

*David H. Weiner,* with him *Wade K. Newell,* for appellants.

*Jonathan Allison,* with him *Schmidt & Allison,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, April 23, 1952:

On June 2, 1947, Charles P. Yezbak and his wife, Catherine Yezbak, received from Louis Croce and Reuben F. Lowe and their respective wives, the sum of $10,000 as down payment on the sale of two lots and a scrap yard, the total selling price being $19,000 and the balance of the purchase price being secured by a purchase money mortgage in the sum of $9,000.

The terms of the mortgage provided that the purchasers were to pay $1,000 for each of the first three months, and $100 with interest each month thereafter. By agreement dated July 12, 1948, Louis Croce and his wife purchased the interest of Reuben F. Lowe and his wife.

On January 26, 1950, the Yezbaks entered judgment on the bond accompanying the mortgage and a writ of fieri facias issued for $3,300 with interest and attorney's commission. The Croces obtained in the Court of Common Pleas of Washington County a rule on the Yezbaks to show cause why the judgment should not be opened. A hearing was held before a commissioner and the matter was subsequently heard before a court en banc. On the refusal of the court en banc to open the judgment, an appeal was taken to this Court.

At the commissioner's hearing, Louis Croce testified that on or about June 5, 1947, he and Charles P. Yezbak entered into an oral agreement, the purpose of which was to insure the mortgage payments, the terms being that Croce would ship scrap iron to Yezbak's account through a broker, and Yezbak would pay the market price for such shipments. In pursuance of this agreement he shipped 19 cars of scrap and rubber on Yezbak's account through Max Solomon & Company, a broker. On August 15, 1947, Yezbak had credited $3,025 from the sale of scrap iron to the three $1,000 payments due for the first three months and he issued and signed an appropriate receipt. Croce contends that there is still due and owing to him $2,748.09, plus interest, which amount should be credited to the mortgage. Yezbak admitted owing Croce $826.41 from scrap dealings but denied that the arrangements as to the shipping of scrap were made for the purpose of securing the mortgage payments. On this point Yezbak testified: "Well, before—when I sold them the place, or

before I sold it, they agreed to sell me all their scrap. There was quite a bit of scrap iron in the yard at the time and we set a price on it and they were to sell it to me until all their debts were paid, and I gave them a figure on it and they wanted to know if there was any protection in case scrap dropped and I said, 'No, they will be the set figure regardless of what happens.' "

Yezbak contends that this language merely indicated that the parties were friendly and that in an effort to be helpful he had provided Croce with a ready sale of the scrap at a steady market, thus reducing the risk of fluctuations in the prices of that commodity. But one could just as easily infer from this language that the parties intended the proceeds from the sales were to be applied to the mortgage payments, especially in view of the fact that the first $3,025 credited by Yezbak on the mortgage came from such sale. Evidence of this credit was admissible as supporting the contention of Croce. The existence of a contractual relation, the terms of an oral contract and the assent of the parties to it may be shown by their acts and the attending circumstances as well as by the words they have employed: 20 Am. Jur., sec. 268, page 256.

The admission of Yezbak of the existence of some sort of an oral agreement pursuant to which $3,025 was in fact credited to Croce excludes application of the rule that parol evidence may not modify a written agreement. The parol evidence rule is based on the assumption that the written contract contains the full and exact agreement of the parties but where admittedly it does not, the reason for the rule ceases: *Ward v. Zeigler*, 285 Pa. 557, 132 A. 798; *Newland v. Lehigh Valley Railroad Company*, 315 Pa. 193, 173 A. 822.

The fact that the Croces assert that the oral contract provided for the sale of scrap through Mr. Yezbak on their behalf at current market prices and the

fact that Yezbak contends he agreed to pay only a fixed price is irrelevant in deciding the issue before us, because once it is conceded that the writing does not fully state the entire agreement between the parties upon any given point, either party has the right to show what the true facts were regarding the matter thus resting in parol. *Ward v. Zeigler,* supra; *Kerr v. McClure,* 266 Pa. 103, 109 A. 600.

The appellee Charles P. Yezbak contends that even if an oral agreement be proved, it was not entered into by Mrs. Yezbak and therefore there was no mutuality of demand. Further, that Mrs. Yezbak could not have authorized her husband to enter into the agreement in her behalf because she could not authorize him to appropriate money from the junk business which belonged to him. But the question is not whether Mrs. Yezbak could authorize her husband to appropriate funds from his own business to the payment of this mortgage, but whether Mrs. Yezbak authorized Mr. Yezbak to accept payment in a certain manner, to wit, by credit on sales of scrap shipped to the account of Mrs. Yezbak. Therefore, the question before us is one of agency and not one of property or ownership as contended for by Yezbak. Under the facts as testified to before the Commissioner, it could very well be that Mrs. Yezbak authorized such an oral agreement so that the payments of the mortgage would be amply secured. While the marital status in itself does not give rise to an agency relationship, it is competent evidence when considered with other circumstances as tending to establish that one spouse was agent for the other. *Mitchell v. First National Bank of Confluence,* 136 Pa. Superior Ct. 467, 7 A. 2d 513. In the Restatement of Agency, section 22, comment b, cited with approval in *Sidle v. Kaufman,* 345 Pa. 549, 29 A. 2d 77, it is stated: "Neither husband nor wife by virtue of the relationship has power to act as agent for the other. The rela-

tionship is of such a nature, however, that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife. *Thus, a husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs."*

Furthermore, the existence of an agency does not need to be established by evidence of specific authority but may be implied from all the attending circumstances. *Sidle v. Kaufman,* supra. In *Messmer et ux. v. McLaughlin,* 122 Pa. Superior Ct. 531, 186 A. 286, the Superior Court, speaking through Judge CUNNINGHAM said: "Authority to perform a certain act for another does not necessarily have to be established by testimony as to express words of authorization from the principal. It may, under certain circumstances, be inferred from a definite course of dealing, undertaken by the agent and accepted by the principal. This rule is based upon the theory that known actions, if not explained away may be consistent only with a principal-agent relationship. Consequently, it is permissible to imply the authority of an agent to collect the principal of a mortgage from such facts as that he had previously received and receipted for payments on account of principal and that his acts had been approved and ratified by the mortgagee: Patterson v. Van Loon, 186 Pa. 367, 40 A. 495; Williams v. Cook, 289 Pa. 207, 137 A. 232. In the latter case it was said (p. 213) : 'If a mortgagee gives credit for money, collected by another who represented himself as the mortgagee's agent, and that other subsequently, in the same business, collects more money and fails to pay it over to the creditor, it may be inferred that his conduct in so receiving was authorized.' "

The fact that Mrs. Yezbak did not receive her one-half share of all the payments would be immaterial

so long as she authorized her husband to receive the payments. Yezbak admitted receiving the $10,000 payment and making up a receipt for that amount, and Mrs. Yezbak did not contest the propriety of the payment or receipt. In addition, Yezbak admitted crediting the $3,025 from the scrap dealings and Mrs. Yezbak testified that she received $1,500 of that amount, thereby approving of the method of payment. Her testimony, as follows, is significant: "Q. Now, the payment of the first $3,000 and the interest on the mortgage was receipted for by Mr. Yezbak, was it not? A. That is right. Q. Signed on behalf of himself and you? A. That is right. Q. He had authority to do that? A. He is my husband. Q. And as your husband, he had authority to carry on these negotiations for you? A. I wasn't in the business. Q. But he had authority to carry on the negotiations and the closing of the deal for the sale of the property? A. That is right, with my privilege—with my consent. Q. With your consent? A. Yes with my consent. Q. That is right, and how much of this $3,000 did he give you that he receipted for on August 15, 1947? A. $1500."

Thus, there was sufficient evidence from which it could be inferred that Charles P. Yezbak was acting as agent for his wife, Catherine, in the entire transaction and the parol contract entered into by him was, therefore, binding on his wife.

The lower Court held that the claim of the appellants, the Croces, was an unliquidated one which could not be asserted against a judgment on a sealed instrument. This is the rule where the debt claimed to be owing is in no way related to the obligation on which the judgment is entered. But as early as 1900, in *Cooke v. Edwards*, 15 Pa. Superior Ct. 412, it was indicated that an exception would lie where the agreement in question provided that the debt sought to be set-off or counter-claimed would be credited on the

obligation on which the judgment was entered. Again, in *Baird et al. v. Otto,* 90 Pa. Superior Ct. 452, emphasis was laid on the fact that the debt due the judgment debtor on a subsequent purchase was in no way related to the note on which judgment had been entered. In *Gallen's Estate,* 18 Pa. Superior Ct. 365, the Superior Court said: "The appellant's contention is that the payment made by him at the special instance and request of the petitioner after the date of the award should have been treated by the court below as payment and satisfaction of the award. The complete answer to his contention is that he does not allege that there was any agreement between him and her that the money paid on her behalf and the money lent to her was to be so applied. Without such agreement he cannot say that he has paid the award nor can he set off the indebtedness from her to him against the award."

Thus, whether the oral agreement be considered as supplemental to the bond and mortgage, as providing for the methods of payment due thereunder, or whether it be considered a part of the bond and mortgage itself, the amount due and owing under the oral agreement would bear directly on the issue of whether or not the mortgage has been paid in full.

Furthermore, the evidence indicates that the judgment was entered on the bond on January 26, 1950, and that at that time appellants, the Croces, were up to date on their payments. Without default appearing, there can be no entry of judgment: *P. Minnig Co. v. Carter,* 113 Pa. Superior Ct. 231, 173 A. 726; *Jordan v. Kirschner,* 94 Pa. Superior Ct. 252; *Kolf v. Lieberman et al.,* 282 Pa. 479, 128 A. 122; *Arata v. Wright,* 101 Pa. Superior Ct. 575.

On the case presented by the evidence before the Commissioner, judicial discretion required that the judgment should have been opened and appellants let into a defense. The rather complicated and overlapping

questions of fact presented by the pleadings and the hearing—such as the existence of the oral agreement, its purpose and terms, its authorization by Mrs. Yezbak, the amount due and owing thereunder and the amount due and owing on the mortgage itself—should be resolved by a jury, under appropriate instructions from the Court, to the end that full justice be done.

Order reversed; petition reinstated; the rule to open is made absolute; the record is remitted for further proceedings, costs to abide the event.