# Wilson v. Cumberland County National Bank and Trust Company

*Kerwin and Kerwin,* for plaintiffs.
*Louis J. Adler,* for claimant.
*David C. Eaton,* for defendant.

CALDWELL, *J.,* May 23, 1978—On September 15, 1977, a jury rendered a verdict against the interpleaded claimant and in favor of defendant in the above matter. Thereafter, on September 19, 1977, said claimant filed motions for a new trial and/or for judgment notwithstanding the verdict, which have been briefed and argued and are before us for disposition.

On July 8, 1975, Frieda J. Wilson presented a check in the sum of $22,081.23 to an employe of defendant at one of its branch offices. The check was payable to "Jimmie Wilson *and* Frieda J. Wilson," and represented proceeds from the sale of real estate owned by the Wilsons, who were husband and wife. Frieda instructed defendant's agent that she wished to deposit the check in a savings account so that her sister, Frances M. McCarthy, would have access to the funds and would become the owner of the funds in the event of Frieda's death.

Thinking the check to be payable to Jimmie *or* Frieda Wilson the bank's agent thereupon opened a new savings account in the names of "Frieda Wilson and Frances McCarthy," and stamped the check "credited to the account of the within-named payee in C.C.N.B., absence of endorsement guaranteed." Contrary to this endorsement, the check was then entered as a deposit in the said savings account and the funds were collected by defendant from the drawee bank in the normal course of business. Frieda died on August 30, 1975, and on September 2, 1975, Frances withdrew $3,000 to pay the expenses of her sister's last illness and funeral. Thereafter defendant refused to recognize Frances McCarthy as the owner of the funds in the savings account and refused to pay over any further moneys. At that time defendant also refused the request of plaintiffs for the funds and the within suit was filed on April 8, 1976. The complaint alleges generally that defendant improperly handled the transaction by depositing the subject check without authority and without proper endorsements, and requested payment of the funds to plaintiffs. The bank brought in Frances McCarthy

as an interpleaded claimant and various pre-trial motions for judgment filed by the parties have been denied. Shortly before trial defendant paid the amount of the purported deposit to Jimmie Wilson, but continued its argument that it has no liability to Frances McCarthy. The trial before the jury was thus a contest between Frances McCarthy and the bank. As noted the jury returned a verdict in the bank's favor.

The check that was presented to the bank by Frieda J. Wilson was payable to her *and* her husband and they were deemed in law to have owned the check as tenants by the entireties. Neither of the payees owned the item individually nor had either any divisible interest in the check or the proceeds which it represented. A tenancy by the entireties is a legal entity that is owned separate and apart from either the husband or the wife and, unless authorized by the other, neither has the legal power or capacity to effectively transfer or otherwise affect the ownership of an asset held in this unique estate: Shapiro v. Shapiro, 424 Pa. 120, 224 A. 2d 164 (1966). These principles of law are not disputed by the parties and a recitation of extensive legal authority for them is not necessary herein. Although in accord with the general legal status of an estate by the entireties, it is contended by Frances McCarthy that the evidence in this case disclosed that Frieda was authorized by Jimmie to use the check and the proceeds represented by it in the manner described, and that the deposit created in her name must be honored by the bank.

Before reviewing the evidence bearing on the issue of Frieda's authority from Jimmie to convert the check as she did, we must take up defendant's contention that the interpleaded claimant is lim-

ited to showing evidence of the grant of *express* authority from Jimmie to Frieda, and that evidence of *implied* authority is not admissible because of the nature of the claim. The basis for this position consists of several appellate decisions relied on by defendant.

In Milano v. Fayette T. & T. Co., 96 Pa. Superior Ct. 310 (1929), a bank attempted to defend its payment of the funds in a savings account, titled in the names of a husband *and* wife, on the signature of the husband alone. The court stated that "[i]n the absence of an express agreement that the money could be paid to either or only one of them . . . the implied agreement would apply that the money could not be withdrawn except upon checks or orders signed by both of them . . ." In Madden v. Gosztonyi S. & T. Co., 331 Pa. 476, 486, 200 Atl. 624 (1938), the court explored in depth the history and development of the novel tenancy or estate by the entireties. The court noted that where an estate by the entireties is titled in the names of a husband *or* wife, there is an immediate expression of authority, or agency, of one to act for both. However, the court held that where a deposit is payable to husband *and* wife (as was the case) the signatures of both are required to withdraw funds. Here again the court recognized that "there is nothing in the law relating to entireties that would prevent the wife from giving the husband express authority to sign for her as her agent and withdraw for both of them, although no such authority may be implied." See also Kauffman v. Stenger, 151 Pa. Superior Ct. 313, 30 A. 2d 239 (1943).

While these cases tend to support the bank's argument we believe that they refer to the principle that no presumption flows from the marital rela-

tionship that one spouse in conveying entireties property acted as the agent for the other. See Grambo v. South Side B. & T. Co., 141 Pa. Superior Ct. 176, 14 A. 2d 925 (1940), and Thees v. Prudential Ins. Co. of America, 325 Pa. 465, 190 Atl. 895 (1937). There is support for the ruling we made in this case that the authority of Frieda to act for Jimmie may be found from express or implied evidence of such. See Community Federal S. & L. Assn. v. Luckenbach, 436 Pa. 472, 261 A. 2d 327 (1970); Berhalter v. Berhalter, 315 Pa. 225, 173 Atl. 172 (1934); Mitchell v. First National Bank of Confluence, 136 Pa. Superior Ct. 467, 7 A. 2d 513 (1939). The only evidence introduced at trial that would constitute proof of express authority from Jimmie to Frieda consists of the signature card for a checking account opened with defendant bank on January 30, 1975, in the names of "Wilson, Jimmie or Frieda J." The agreement with the bank provides, in part, as follows: "Each depositor authorizes the other to indorse for deposit in the joint account any instrument payable to his order or to the order of either or all joint depositors. . . . while both joint tenants are living either may draw . . ."

It is submitted by Frances that these agreements with the bank are evidence of express authority from Jimmie to Frieda to deposit a check payable to them as tenants by the entireties in such a way as to divest Jimmie of his interest and permit the transfer of that interest in said item to another. We disagree that this interpretation is correct and believe the conditions imposed when the checking account was opened are limited to authorizing each owner to deposit funds of either or both in the particular account and to make proper disbursements therefrom. When referring to the express authority

granted to each other by virtue of the agreement with the bank, it is important to distinguish between what each signator was *authorized* to do and what each had the *power* to accomplish. Because one co-tenant may have been cloaked with the *power* to dispose of assets owned by the entireties, it does not follow that such an act is *authorized*. Furthermore, we think it stretches logic to argue that because one could have deposited the check in an account owned by the entireties, authority existed to deposit the check in a foreign account. Thus, we find no express authority upon which Frieda could have relied.

The testimony of those who professed knowledge of circumstances which showed implied authority was totally inadequate to accomplish its intended purpose. What little evidence there was at most suggested that Frieda may have handled the majority of the business affairs of the marriage, but this cannot be used as evidence of authority to dispose of assets owned by the entireties. Jimmie Wilson himself testified he did not discuss the check with his wife or authorize her to deal with the proceeds of the check in his behalf. Furthermore he stated he did not authorize her to open the savings account with her sister and his plan for the check would have been to deposit it in the checking account owned with his wife. In our view the total sum of all the evidence was clearly insufficient to support a finding in favor of Frances.

The other point pressed by the interpleaded claimant is that the bank should be estopped as a matter of law to deny its liability to said claimant.

It is first argued that applicable here is a line of cases which hold that a bank may not dispute the validity or ownership of an account on deposit at the

bank. We concur in the holding of these cases but they are not applicable to the posture of this matter. In the absence of authority from Jimmie to Frieda, to transfer the ownership interest in the check in question, the delivery of the check to the bank constituted a deposit by the owners thereof, i.e., the tenants by the entireties. In absence of the requisite authority in Frieda, Frances obtained no vested interest in the deposit of the entireties property and we view her name on the title as a nullity and subject to question by the owners of the funds or by the bank upon discovery of the error.

An alternative theory of estoppel advanced by Frances is based upon a concept of negligence on the part of the bank. It is argued that the bank's agent should have suggested that the check to Jimmie and Frieda be deposited in the entireties checking account, and a similar amount be drawn by Mrs. Wilson and used to open the savings account with her sister. While we agree the funds could have been negotiated by this expediency, we already have noted that such handling of the check would have been an improper and illegal act by Frieda. Had this occurred we have no doubt Frances would hold the funds as a constructive trustee for Jimmie. In Berhalter v. Berhalter, supra, the court said:

"One of the parties cannot destroy the incidents of the entirety by any act of his or hers: . . . Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto."

The effect of the agent's oversight was simply to frustrate Frieda from accomplishing an act that she was not authorized to perform in the first instance. Any error by the bank in this matter merely served to prevent a wrong and a stranger to the funds cannot receive a windfall in such circumstances. It is true that Frances was innocent concerning the transaction, but we fail to agree with her premise that because of a bank's oversight she is somehow entitled to receive money in which she had no interest and over which her sister exercised improper dominion.

## ORDER

And now, May 23, 1978, interpleaded claimant's post-trial motions are denied and judgment is entered for defendant.