Englerth *v.* Battersby, Appellant.

Argued October 1, 1931.

Before
TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNING-
HAM and BALDRIGE, JJ.

*Leon S. Gross,* and with him *A. L. Mulhern,* for
appellant.

*Joseph A. Keough,* for appellee.

OPINION BY GAWTHROP, J., November 16, 1931:

This action was brought to recover the sum of $300
in payment for professional services rendered by
plaintiff, a surgeon, in performing a surgical opera-
tion on one Naomi Prendergast at the Pottstown Hos-
pital. The trial was had before a judge of the munici-
pal court sitting without a jury, and the finding was
in favor of plaintiff. The only question raised on this
appeal by defendant is whether error was committed
by the court below in dismissing defendant's motion
for judgment notwithstanding the finding for plaintiff.

In March, 1927, Naomi Prendergast, while riding as
a passenger in an automobile driven by defendant,
sustained a serious injury. Defendant took her to the
Pottstown Hospital, requested that she be treated
there, and told the hospital authorities that he would
pay the hospital bills. Dr. Wills, the chief surgeon of

the hospital, took charge of the case. The patient had sustained a compound fracture of the leg. After a time an infection developed. Defendant admits that he employed and paid Dr. Nassau, a Philadelphia surgeon, to consult with Dr. Wills as to the advisability of amputating the patient's leg. Dr. Nassau testified that Dr. Wills requested him to go to see the patient; that he met Dr. Wills and defendant at the hospital, saw the patient and expressed the opinion that an amputation of her leg was necessary; that Dr. Wills asked him to perform the operation, and that defendant "wanted me to do it" but he told them that it was impossible for him to do it, and suggested to defendant that he have Dr. Wills perform the operation; that "Battersby wouldn't let Wills do it" and "wanted to know who he should get;" that he (Dr. Nassau) suggested that plaintiff should do it and that defendant "wanted to get who I would suggest." Dr. Wills requested plaintiff to perform the operation and the plaintiff went to Pottstown and performed it successfully. All of the evidence is to the effect that the fee of $300 charged by plaintiff was reasonable.

The contention of counsel for appellant is that the evidence is insufficient to establish defendant's liability under a contract either express or implied. To this we cannot agree. While it is true that plaintiff and defendant never met until the day of the trial and there had been no oral or written communications between them, defendant may be held liable if a contract between him and plaintiff resulted from the acts of his accredited agent. A principal is bound by the acts of his accredited agent which are reasonably incident to the full performance of the agent's contract of service: Tyson v. Baizley, 35 Pa. Superior Ct. 320. In our view the evidence of the acts and conduct of defendant at the time Dr. Nassau met him and Dr. Wills was sufficient to permit the court below to find that

Dr. Wills, as the physician in charge of the case, was authorized by defendant to employ plaintiff to perform the operation. Defendant admits that he had agreed to pay for all medical services in connection with the treatment of the patient. He paid Dr. Nassau for his services at the consultation. Dr. Nassau had been summoned by Dr. Wills. As the testimony shows that plaintiff was engaged to perform professional services by direction of defendant's accredited agent, the law implies liability to pay therefor: Klopp v. Sternberg, 76 Pa. Superior Ct. 209. The court below reached the proper conclusion.

The judgment is affirmed.