## Commonwealth v. Hancock

*Richard D. Walker*, first assistant district attorney, and *Huette F. Dowling*, district attorney, for Commonwealth.

*Nicholas J. D'Alessandro* and *Earnest & Torchia*, for defendant.

KREIDER, J., June 30, 1954.—This case comes before the court on a motion in arrest of judgment and for a new trial. Defendant, indicted for the crime of cheating by fraudulent pretenses,[1] was found guilty by a jury.

## The Facts

On June 4, 1951, defendant, Vernon Hancock, came to the office of the E. R. Klinger Lumber Company, at Elizabethville, Dauphin County, Pa. Defendant in-

---

[1] The Penal Code of June 24, 1939, P. L. 872, sec. 836, 18 PS §4836.

formed E. Leroy Klinger, the president of the lumber company, that he had a contract [2] to build a garage or service station with a few apartments on the second floor at Fountain Springs near Ashland in Schuylkill County, Pa., and that he needed a large quantity of lumber for the job. In the course of this conversation a list of the lumber required was compiled, whereupon Klinger advised defendant that although not all of the lumber in the order was presently in stock, the Klinger Lumber Company would attempt, through the acquisition of the unstocked items from other lumber dealers, to furnish him with all the lumber as specified.

Defendant informed the president of the company that he wanted *all* of the lumber delivered *at one time* so that he could, with due speed, have the building in an advanced stage of construction within 30 days and thus be entitled to receive a substantial down payment on his building contract and that this down payment would be used to pay for the entire amount of lumber ordered from the company. The latter, relying on defendant's statement that he had a building contract, extended credit to him. Whereupon lumber and other materials of the value of $3,747.88 were ordered then and there by defendant. Before leaving, defendant informed E. Leroy Klinger that he was living with "the party" for whom he was constructing this building and that the latter's telephone number was 730 Ashland, should Klinger wish to contact him. Three days later, June 7, 1951, defendant called Klinger and again asked that delivery of the lumber be made as soon as possible. Five days thereafter, on June 12, 1951, Klinger telephoned Ashland 730. A man at the other end of the line identified himself as Lamont

---

[2] That defendant said he had a contract appears at least four times in the testimony, and Leroy Klinger also testified Lamont Miller said to him that Hancock had a contract with him to erect a building on Miller's premises.

Miller (frequently referred to in the testimony as "Monk" Miller) and he told Klinger that he was the party with whom Hancock had a contract to erect a building.

On June 15, 1951, the first delivery was made. Eston R. Klinger, father of E. Leroy Klinger and vice president of the Klinger Lumber Company, accompanied the load of lumber to Fountain Springs, Schuylkill County. The delivery was made in a truck owned by the Klinger Lumber Company. The lumber was delivered on land owned by Lamont Miller, who was present when delivery was made. Defendant Hancock arrived on the scene soon thereafter, discussed with Mr. Klinger the size of certain windows to be delivered and again asked that delivery of *all* the lumber be made *at one time* so that the construction could be completed *without delay*. Thereafter, additional loads of lumber were delivered. On June 22, 1951, Miller accepted delivery of the load by signing his initials and the name of defendant Hancock on the receipt therefor.

Earl Klinger, an independent wholesale lumber dealer and a brother of E. Leroy Klinger, but in no way interested in the E. R. Klinger Lumber Company, was solicited by the Klinger Lumber Company to acquire some of the specified lumber not in stock. This undoubtedly was with defendant's approval because at his first meeting with Leroy Klinger the latter wrote the name of Earl Klinger opposite some of the unstocked items which defendant allegedly needed. In his own truck Earl Klinger traveled to Old Saybrook, Conn., and purchased the lumber for which he there paid out of his own funds. On returning he attempted to deliver the lumber to defendant at Fountain Springs in Schuylkill County but was unable to locate him; whereupon he continued on to Elizabethville, Dauphin

County.[3] The next day he unloaded this lumber onto a truck owned by the E. R. Klinger Lumber Company at the latter's premises. Later it was taken to Schuylkill County.

On or about July 14, 1951, after all of the lumber had been delivered, Eston Klinger went to the premises where the lumber previously had been stored on the premises of Lamont Miller in Schuylkill County. No building operation had been started. Eston Klinger contacted Miller who advised him that building would begin on July 16, 1951. On July 17, 1951, Eston Klinger returned to the Miller premises and discovered that all of the lumber and other materials had been removed and no building had been started. He immediately telephoned Lamont Miller. Miller stated that "he and Vernon Hancock had had a scrap and Hancock loaded the lumber to North East, Erie County, Pennsylvania."

Eston Klinger thereafter employed the services of John J. MacDonald, a licensed private detective, whose office is at Pottsville, Schuylkill County, to investigate the matter. C. W. Hamberger, of the Pennsylvania State Police, collaborated in the investigation. As a result of their efforts portions of the lumber delivered to the Miller premises were found on other premises in Fountain Springs, Schuylkill County; some was being used to repair a church and some was in a garage at Mt. Carmel, Northumberland County; some on a farm at Sagerstown in Crawford County; some on a farm in Roaring Creek Valley in Columbia County; some at a residence in Frackville, Schuylkill County, and another portion in a garage in the village

---

[3] The Borough of Elizabethville, Pa., is situated in the northern part of Dauphin County about 10 miles distant from the Schuylkill County line and 38 miles from Fountain Springs in Schuylkill County.

of Helfenstein, Schuylkill County. Testimony revealed that some of the lumber was sold by Lamont Miller 10 days *prior* to the last delivery made by the Klinger Lumber Company and that thereafter Miller had made arrangements and supervised the removal and storage of the balance of the lumber, beginning at 4 o'clock on Sunday morning, July 15, 1951, and ending at 7 or 7:30 a.m. the same day.

### *Motion in Arrest of Judgment*

Defendant moved in arrest of judgment, asserting that the court erred in overruling a motion to quash the indictment filed in June sessions, 1953, no. 66, because:

(a) The indictment was fatally at variance with the information returned.

(b) The information did not charge an indictable offense.

(c) The "new" indictment, made after the original indictment was quashed upon motion of the District Attorney of Dauphin County, contained an element of the offense charged, which element was not contained in the information.

The essential language of the information is as follows:

"That on the 4th day of June, 1951, at R. D. Elizabethville, County of Dauphin, and State of Pennsylvania, one Vernon E. Hancock of North East, Pennsylvania, Erie County, did unlawfully and falsely and designedly pretend to one Eston Klinger and Son Lumber Company of Elizabethville, R. D. Dauphin County, Pennsylvania, that he, the said Vernon E. Hancock, wished to order lumber and *did order lumber*, to a value of Three thousand seven hundred forty-seven dollars and eighty-eight cents ($3747.88), lawful money of the United States, *for the purpose of building*, and that the said lumber would be paid in thirty days time; and all of which he the said defendant,

Vernon E. Hancock, then and there well knew to be false and untrue; however the said Eston Klinger and Son Lumber Co. relying upon the said statement and believing it to be true, delivered to one Vernon E. Hancock the said lumber to a value of Three thousand seven hundred forty-seven dollars and eighty-eight cents ($3747.88) ; and by color and means of which he the said Vernon E. Hancock obtained from the said Eston Klinger and Son Lumber Company the said lumber, knowing that he intended to convert the said lumber into cash money and *not use same for building, as originally stated when ordered;* and all this was done with an intent to cheat and defraud the said Eston Klinger and Son Lumber Co. of the said lumber and monies, to a value of Three thousand seven hundred forty-seven dollars and eighty-eight cents ($3747.88), . . ."[4]

In Commonwealth v. Thomas, 166 Pa. Superior Ct. 214, 216 (1950), the crime of false pretense is defined as follows:

" 'A criminal false pretense has been said to be "the false representation of an existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does, in fact, deceive, and by means of which one person obtains value from another without compensation": *Com. v. Goldberg et al.,* 130 Pa. Superior Ct. 252, 260, 196 A. 538, 542. In order to bring a case within the statute, the following elements must co-exist: (1) a false pretense; (2) an obtaining of property or something of value thereby; (3) an intent to defraud.' *Com. v. Gross,* 161 Pa. Superior Ct. 613, 618, 56 A. 2d 303, 306."

We feel these elements are sufficiently presented in the information and, as set forth, they charge an indictable offense.

---

[4] Italics throughout ours unless otherwise noted.

Where an information puts defendant on notice of the substance of the crime for which he is being held, it is sufficient. "The technical accuracy necessary to an indictment is not essential in an information": Hirt, J., in Commonwealth v. Beloff et al., 166 Pa. Superior Ct. 286, 289 (1950). It need not charge the crime with the same detail and technical accuracy required in an indictment, but if the essential elements of the offense are set forth in terms of common parlance it is sufficient: Commonwealth v. DeBaldo, 169 Pa. Superior Ct. 363, 366 (1951); Commonwealth v. Spallone, (No. 1) 154 Pa. Superior Ct. 282, 285, 286 (1943); Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107, 116 (1940). For a comprehensive review of the earlier cases on this question see Commonwealth v. Zimmerman, 24 Dist. R. 1050, 1052 (1915), Northumberland Co., Moser, J., citing Commonwealth v. French, 13 Dist. R. 275:

". . . Magistrates are not required to be learned in the law, and it would surely be straining everything for the benefit of the accused to the great detriment of the law-obeying citizens if fine technicalities are to be enforced in favor of those charged with crime, and the District Attorney be prohibited from putting in legal shape that which the layman magistrate has stated in his unlearned way. . . . The District Attorney's right to put in legal verbiage the accusation and in many cases to vary it from the magistrate's return, within proper limits, has been recognized too long to now doubt it. . . ." and Nicholson v. Commonwealth, 96 Pa. 503.

The indictment in June sessions, 1953, no. 66, charged, inter alia, that defendant *"did falsely* and designedly *pretend to need* a certain amount of *lumber* to a value of $3747.88, lawful money of the United States, for the purpose of constructing a certain building, which he had contracted to build for one, Lamont

Miller." Defendant contends that there is no language in the information which sets forth that defendant made a representation of an existing fact to the lumber company, and that the addition of allegations in the indictment whereby it is set forth that defendant did represent an existing fact to be true, which in fact, was not true, puts the indictment at variance with the information. Therefore, defendant moves that judgment be arrested.

Defendant's contention is without merit. The *information* states: ". . . (Hancock) . . . *did order lumber . . . for the purpose of building. . . .*" We think that language cannot be construed other than that defendant represented to the lumber company that he *needed* some material to accomplish some construction work. Although the work can only be done in the future (after the materials are acquired), *the falsely represented existing fact is* that defendant, when he spoke, *said* in substance that *he needed lumber* for the purpose of erecting a building. *He*, in fact, *had no such need*. In Commonwealth v. Anselmi, 61 Dauph. 120 (1950), (page 123) defendant made a false oral statement to an intending purchaser that a prefabricated house was loaded on a truck which was then on its way from the South and that delivery would be made in a few days if the purchase price was paid at once. This court, speaking through Judge Neely, held that "the representation that the house was on the truck was a representation of an existing fact."

Although the words "which he had contracted to build" are not used in the information, their use in the indictment is not fatal. As stated, exact technical language is not necessary in an information. Therefore, the language used in framing an indictment need not be transcribed verbatim from the information. The requirement of the law is that the indictment conform to the information with respect to the crime charged

and the elements thereof set forth in the latter document. The indictment in the instant case was valid. There was no variance between it and the information in any material degree.

Further, where, as in the instant case, a defendant has had a preliminary hearing, has given bail for court, and has been regularly indicted by a grand jury upon examination of witnesses, *it is then too late to question the sufficiency or regularity of proceedings prior to the indictment.* His proper remedy, should defendant have felt himself aggrieved under such circumstances, was by proceeding to be discharged from custody upon the ground of illegal commitment and not by a motion to quash the indictment: Commonwealth v. Murawski, 101 Pa. Superior Ct. 430, 431 (1931); Commonwealth v. Gross, 172 Pa. Superior Ct. 85, 92 (1952); Commonwealth v. Poley, 173 Pa. Superior Ct. 331, 336 (1953); Commonwealth v. Lubold, 60 Dauph. 150, 152 (1949), Woodside, J.

Judgment in a criminal case can only be arrested for defects apparent on the face of the record: Commonwealth v. Strantz, 137 Pa. Superior Ct. 472, 474 (1937). The record in a criminal case consists of the indictment, the plea, the issue, and the verdict: Commonwealth v. Hopkins, 156 Pa. Superior Ct. 648, 650 (1944); Commonwealth v. Christopher, 168 Pa. Superior Ct. 592, 595 (1951). "The information and warrant constitute no part of the record", and, therefore, cannot be considered by the court on a motion in arrest of judgment: Commonwealth v. Geibel, 13 D. & C. 115, 116, 117 (1929), Montgomery Co., Williams, P. J. Even if there had been a variance between the information and the indictment, a motion in arrest of judgment is not the proper mode of raising the question of variance: Commonwealth v. Balutis, 5 Schuyl. Reg. 62, 64 (1937), Houck, J.; Commonwealth v. Dixon, 68 Pitts. L. J. 657, 658 (1920), MacFarlane,

J.; Commonwealth v. Zayrook, 30 Pa. Superior Ct. 111, 113 (1906).

## Motion for New Trial

In his motion for a new trial defendant contends (1) that the trial judge erred in admitting (a) hearsay evidence, and (b) evidence concerning the disposition of the lumber subsequent to its delivery in Schuylkill County, and (2) that this court has no jurisdiction to try defendant. The evidence adduced at the trial disclosed that the lumber ordered by defendant Hancock was stored on premises owned by Lamont Miller. It was further revealed that the lumber was removed from the Miller premises, as stated, at 4 a.m. Sunday, July 15, 1951, and some stored under apparently secret conditions under the direction and supervision of Miller. Over the objection by defendant, the trial judge admitted statements made by Miller in defendant's absence. We believe the *evidence disclosed a common purpose and scheme in the actions of Hancock and Miller.* The general rule is that statements are only admissible against the party who makes them, but where, as here, there is proof of a combination of several persons for an unlawful purpose, any act done by one party in pursuance of a concerted plan with reference to the crime charged, is the act of all and the proof of such act is evidence against any and all of the others who were engaged in the unlawful common plan or design. This rule applies even though there is no indictment for conspiracy involved: Commonwealth v. Sheaffer, 149 Pa. Superior Ct. 51, 55 (1942) ; Commonwealth v. Spardute, 278 Pa. 37, 49 (1923) ; 22 C. J. S. 296, §758; Commonwealth v. Viscount, 118 Pa. Superior Ct. 595, 602 (1935). Further, where motive, intent, or purpose in doing an act is material to the issue, evidence thereof may be admitted as part of the res gestae of the crime, or, when not actually accompanying the crime, it should be admitted as an

exception to the hearsay rule. Henry, Pennsylvania Evidence, 4th ed., vol. 1, sec. 469, pp. 469-70; Commonwealth v. Marshall, 287 Pa. 512, 522 (1926). Therefore, we feel the statements made by Lamont Miller and the evidence regarding the disposition of the lumber after it was removed from the Miller premises were properly admitted in evidence.

## Jurisdiction

In both the motion in arrest of judgment and the motion for a new trial defendant contends that the trial court erred in instructing the jury that as a matter of law the Dauphin County court had jurisdiction and that the jury need not consider that question in its deliberations. This argument is founded upon the contention that the lumber was "obtained" in Schuylkill County and therefore venue could only be properly laid in Schuylkill County. The jurisdictional issue was raised by defendant's counsel throughout the proceedings in this case, viz., by a rule to show cause why the information should not be quashed and the prosecution dismissed; by a petition to show cause why the instant indictment should not be quashed; by a subsequent motion to quash this indictment and, finally, in his closing argument to the jury. In view of the fact that the Commonwealth's testimony relative to jurisdiction was not questioned or contradicted in the slightest degree by defendant[5] or any other witness, the trial judge instructed the jury that if it found "the facts to be, beyond a reasonable doubt, as presented by the Commonwealth in its evidence, then Dauphin County has jurisdiction of this case." We feel this action was proper. Furthermore, this court previously had decided that it had jurisdiction: Commonwealth v. Hancock, 64 Dauph. 372 (1953), Smith,

---

[5] Defendant did not testify and no evidence was offered on his behalf.

P. J., in which the rule to quash the information was dismissed.

Defendant contends that since all deliveries of lumber were made in Schuylkill County by means of trucks owned by the Klinger Lumber Company or in trucks owned by other lumber dealers, who were requested by the Klinger Lumber Company to deliver some of the lumber, the lumber was not "obtained" in Dauphin County and therefore, jurisdiction to try the crime of cheating by fraudulent pretenses cannot be had in Dauphin County, citing Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348 (1903), affirmed in 207 Pa. 544 (1904). In that case, goods were shipped to defendant in Allegheny County, Pa., by railroad from New York City. It was held that the goods were "obtained" in Allegheny County and the courts of that county had jurisdiction of the case.

The question in the Schmunk case, supra, regarding where the goods were "obtained", was considered in Commonwealth v. Karpowski, 167 Pa. 225 (1895). In that case goods were shipped by common carrier (a railroad) from Easton, Northampton County, Pa., to defendant in Shenandoah, Schuylkill County. The opinion of Judge Reeder, adopted per curiam by the Supreme Court, held jurisdiction to be properly laid in Northampton County. At page 227 it is stated:

*"A delivery to the common carrier of these goods addressed to Andrew Karpowski was a delivery to him. The goods, therefore, were delivered to Karpowski himself within the jurisdiction of this court."*

Defendant contends, however, that since the goods were not shipped by a common carrier, Dauphin County cannot acquire jurisdiction, and, therefore, under the law regarding venue, as announced in both the Schmunk and Karpowski cases, supra, defendant cannot be prosecuted for the crime of cheating by false pretenses in Dauphin County.

The crime of cheating by fraudulent pretenses is defined in The Penal Code of June 24, 1939, P. L. 872, sec. 836, 18 PS §4836, as follows:

"Whoever, by any false pretense, obtains the signature of any person to any written instrument, or obtains from any other person any chattel, money, or valuable security, with intent to cheat and defraud any person of the same, or being an officer, manager, agent, employe of or in any way interested in any person, by false pretense, knowingly and with intent to defraud, procures, obtains, or aids, assists, or abets in obtaining from any other person, any chattels, moneys, or valuable securities for such person of which he is an officer, manager, agent, employe or in which he is in any way interested, is guilty of a felony. . . ."

Nothing is specifically set forth in The Penal Code regarding where jurisdiction attaches to try the offense of cheating by false pretenses. The general rule is that a court has jurisdiction of an offense only when it is committed within the county where the case is tried: Commonwealth v. Wojdakowski et al., 161 Pa. Superior Ct. 250, 257 (1947); Commonwealth v. Tarsnane, 170 Pa. Superior Ct. 265, 267 (1952). However, exceptions to this rule have arisen both by statute and by decisional law. The statutory exceptions in Pennsylvania relate, among others, to (1) jurisdiction where death occurs in one county and the cause of death in another: Act of May 8, 1889, P. L. 135, sec. 1, 19 PS §522; (2) offenses committed near county lines: Act of March 31, 1860, P. L. 427, sec. 48, 19 PS §524; (3) offenses committed during journeys: Act of March 31, 1860, P. L. 427, sec. 49, 19 PS §525, and (4) jurisdiction of a prosecution for kidnapping: Act of April 24, 1935, P. L. 54, sec. 1, 19 PS §527. All of these statutes relate to specific offenses; however, the offense of cheating by fraudulent pretenses is not included therein. Further, there is no general

statute in Pennsylvania relating to cheating by fraudulent pretenses which provides that were a crime is committed partly in one county and partly in another, that is, where some acts material and essential to the crime and requisite to its consummation occur in one county and some in another, the accused may be tried in either. However, the criminal codes of various other States so provide.[6]

In Pennsylvania "it is well settled that prosecution for criminal conspiracy may be brought in the county where the unlawful combination or confederation was formed, *or* in any county where an overt act was committed by any of the conspirators in furtherance of that unlawful combination or confederacy": Commonwealth v. Mezick et al., 147 Pa. Superior Ct. 410, 413 (1942) ; Commonwealth v. Barnes, 107 Pa. Superior Ct. 46, 59 (1932). The *transportation of stolen goods* into Montgomery County gave the Montgomery County courts jurisdiction of a *larceny* prosecution, even though the larceny was *completed* entirely within *Philadelphia County:* Commonwealth v. Lowry, 153 Pa. Superior Ct. 639, 642 (1943). With respect to the crime of *receiving stolen goods* see Commonwealth v. Zilberberg, 12 D. & C. 781 (1929) ; Berks Co., Mays, J. Likewise, it has been held that a defendant, charged with either the crime of *embezzlement or fraudulent conversion*, may be tried in any county where any part of the crime was committed, *or* where, on being called to account, he disowned having received the money, although the conversion, or elements of it, occurred in another county. This latter principle applies even if the conversion was entirely completed elsewhere. See Commonwealth v. Sexton, 107 Pa. Superior Ct. 69, 71 (1932) ; Commonwealth v. Winegrad, 41 Dauph.

[6] See 22 C. J. S. §177, pp. 267, 268 and §185(*n*), p. 287, footnote 18, wherein the States of California, Idaho, Iowa, Oklahoma and North Dakota are listed.

352, 355 (1935), Hargest, P. J., affirmed in 119 Pa. Superior Ct. 78 (1935); Commonwealth v. Troup, 57 Dauph. 247, 249, 250 (1946), Woodside, J.; Wharton, Criminal Law, 12th ed., vol. 2, §1289.

Where the crime of cheating by false pretenses is charged, some decisions in Pennsylvania appear to adopt the rule of general application that venue can be laid only in the county where the goods were obtained. However, the courts have from time to time qualified the definition placed on the word "obtain". In Commonwealth v. Goldstein, 3 Pa. C. C. 121 (1887), Schuylkill Co., judgment was arrested. There, following the fraudulent representations made personally by defendant while in New York City, the goods were ordered later by letter sent by him from Pennsylvania and were shipped by the person defrauded, from New York by railroad to defendant in Schuylkill County, Pa. It was held that defendant "obtained" the goods in New York and, therefore, the offense was committed there and that the Schuylkill County court had no jurisdiction.

Similarly Commonwealth v. Karpowski, 167 Pa. 225 (1895), involved a determination of the question of venue between Schuylkill and Northampton Counties of this Commonwealth. In that case an agent of the owner of the goods, whose place of business was located at Easton in Northampton County, solicited an order for the sale of the goods from defendant Karpowski in Shenandoah, Schuylkill County. The agent had no power to sell goods; he had only the power to solicit orders for the goods and submit them to the owner. At the time the order was taken defendant Karpowski informed the agent that he had sufficient funds in the bank to pay for the goods. This statement of defendant was transmitted orally by the agent to the owner of the goods at Easton. The latter, relying thereon, delivered the goods to a common carrier in Northampton

County addressed to defendant in Schuylkill County. It was held that. the prosecution was properly laid in Northampton County although the false pretense was made in Schuylkill County. Delivery of the goods. to the common carrier addressed to defendant Karpowski was held to be a delivery to defendant in Northampton County although the goods were not actually obtained until they were taken from the carrier in Schuylkill County.

Where, in consequence of the false pretenses. made in Huntingdon County, the prosecutor, in Philadelphia, delivered goods to a common carrier (railroad) consigned to defendant in Huntingdon County, it was held that the Huntingdon County court had no jurisdiction: Commonwealth v. Mayer, 8 Dist. R. 571 (1898). However, during the same year, where goods were shipped by carrier from Wisconsin to Pennsylvania, it was held that the courts of this State had jurisdiction: Commonwealth v. Everitt, 8 Dist. R. 276 (1898), Monroe Co.

Defendant relies on Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348 (1903). There it was held, as stated, that the courts of Allegheny County, Pa., had jurisdiction to try the offense of obtaining goods by false pretenses where the goods had been shipped by rail from New York to defendant in Pittsburgh in consequence of a letter containing the false pretenses sent by defendant to the shipper in New York. In reaching this conclusion the Superior Court, however, at p. 353 stated:

". . . *It may be that this defendant might be convicted of this offense in New York* under the statutes and decisions of that state, but we are concerned only about his conviction here."

It is to be noted, also, that the Supreme Court in affirming (207 Pa. 544) did *not* overrule *or* distinguish Commonwealth v. Karpowski, supra. In commenting

upon the numerous authorities pressed upon its attention by counsel on both sides in the Schmunk case, the Supreme Court cited as "peculiarly applicable" the English case of Queens v. Holmes, L. R. 12 Q. B. D. 23, in which defendant, an English lace manufacturer in Nottingham, sent a letter containing false pretenses to the prosecutor in France and received in reply a draft which he cashed in Nottingham. In holding that the English courts had jurisdiction of the charge of obtaining money by false pretenses, this significant statement was made (p. 548) :

". . . *It may be that one important part of the offense taking place in Nottingham would be sufficient* but here both ingredients take place in Nottingham."

The Schmunk case was followed in Commonwealth v. Fetterman, 29 Pa. C. C. 46 (1903), wherein President Judge McClure of Snyder County stated:

". . . It is true there is an apparent conflict of authority between the Supreme and Superior courts on the question. While it is decided in *Com. v. Karpowski,* 167 Pa. 225, that a conviction can be sustained in the county where the goods are delivered to a common carrier consigned to the defendant, the court does not decide that there can be no conviction in the county where the goods are actually delivered to the hands of the defendant. This is expressly decided in *Com. v. Schmunk,* and this decision is not open to question by us."

See also Commonwealth v. Johns, 3 Westmoreland 224 (1914), McConnell, J.

Since these cases distinguish rather than overrule each other, it is apparent that where a common carrier is involved, even though the subject matter be a criminal prosecution where normally a more strict construction to prevent injustice and protect the presumption of innocence of defendant is required, the technical distinctions regarding passage of title in the

law of sales were applied. The result, for the purposes of the crime of cheating by false pretenses, is that a person can "obtain" property either (1) by coming into actual possession, or (2) by having the property placed on a common carrier for delivery. In the latter instance more fine distinctions were drawn where questions were raised concerning (1) who paid the freight, consignor or consignee, or (2) to whose order the goods were consigned, shipper or receiver.

The only recent case we have found raising the instant jurisdictional question is Commonwealth v. Zurcher, 45 D. & C. 555, Mercer County (1942), Braham, P. J., fifty-third judicial district, specially presiding. The carrier there involved was a *private* contract carrier. On that basis he was found by the court to be agent of defendant, and it was held that a delivery of milk to this contract carrier was a delivery to defendant who, thereby, under the statute was deemed to have "obtained" it. Therefore, judgment of conviction was sustained against defendant in Mercer County where the milk was originally received by the contract carrier, who delivered it to defendant in Allegheny County at Pittsburgh. The learned opinion in that case apparently represents merely another facet of the doctrine set forth in the Karpowski case, supra.

Moreover, where the property sought to be obtained by the false pretense is sent by mail, the case of Commonwealth v. Zimmerman, 24 Dist. R. 1050 (1915), Northumberland Co., Moser, J., seems to adopt the rule laid down in the Schmunk case, supra, holding that the offense is triable only in the county where the letter containing the money, note or draft is actually received. This is contrary to the general rule of application, see 22 C. J. S. §136(*k*) and §185(*n*), which holds that venue is properly laid in the county wherein such letter is posted, on the theory that the

accused obtains the property in that county through the implied agency of the postmaster. Research has revealed no appellate court decision touching this question in Pennsylvania. Therefore, it would seem that the law, as it now stands, is in the rather anomalous position of recognizing under certain circumstances delivery to a common or private contract carrier as a constructive "obtaining" of property by defendant, whereas delivery to postal authorities for mailing is not regarded by some courts as a constructive "obtaining" of property within the statute making cheating by fraudulent pretenses a crime.

However, in Commonwealth v. Sklar, 17 Westmoreland 249 (1930), Whitten, J., emphasis was put upon the fact that the person who made the false pretense was in another State and the postmaster at Greensburg, Westmoreland County, Pa., was implied to be the agent of the accused in obtaining the draft involved. Therefore, it was held that the property was "obtained" in Westmoreland County and jurisdiction was properly had within that county. The case of Commonwealth v. Wood, 142 Mass. 459, 8 N. E. 432 (1886) was relied upon.

In the instant case it seems clear that the title to the lumber then on hand in the Klinger Lumber Company yard passed to defendant when the company accepted his offer to purchase it. The available lumber was plainly "in a deliverable state", within the meaning of that term in the Sales Act of May 19, 1915, P. L. 543, sec. 18, 69 PS §142. Mr. Justice (now Chief Justice) Stern in Everedy Machine Company v. Hazle Maid Bakers, 334 Pa. 553, 558 (1939), said:

"The time when title passes under a contract of sale is dependent upon the intention of the parties."

See also Dant & Russell S. Co. v. Wash. L. & M. Co., 370 Pa. 627, 629 (1952) where title to lumber was held to pass in Philadelphia although when it was

ordered by defendant it was cargo on board a steamship bound from the Pacific Coast to Philadelphia.

Defendant contends, however, that the lumber was not "obtained" in Dauphin County because the lumber was delivered in Schuylkill County in trucks owned by the Klinger Lumber Co. (which company was neither a common nor a contract carrier), or in trucks of independent dealers under its direction. The testimony discloses, as above stated, that defendant came to the premises of the Klinger Lumber Company at about 7 p.m. on June 4, 1951, and had a conversation with E. Leroy Klinger, president of the company. On direct examination in answer to the question, "What was the subject of your conversation?" E. Leroy Klinger answered:

"Mr. Hancock told me that Mr. Hancock *had made a contract* with a party at Fountain Springs, and that he was going to build a garage or service station with a few apartments on the second story, and that he wondered, Mr. Hancock wondered whether we would be able to furnish him with this lumber.

"He gave a list of the lumber *needed,* and I told him we could furnish it.

"He told me that he would like to have all the lumber at one time in order that he may go ahead with the building without any delay as far as labor or lack of materials was concerned. I told him that we would do our best to get it in as short as possible time."

". . . So, he gave me a list of all the material *he needed.*"

The agreement was entirely oral, except for the list of lumber and materials desired which defendant gave to E. Leroy Klinger. From the testimony it is clear that the Klinger Lumber Company did not have all of the lumber in stock at that time. Some would have to be acquired elsewhere. Defendant Hancock well knew this but readily entered into the contract at the first

meeting with Klinger and at the same time implored the lumber company to furnish him with *all* the lumber at one time. When he learned that could not be done, he constantly demanded that the lumber be furnished to him as soon as possible. Because of the defendant's knowledge of the company's lack of sufficient lumber to meet his falsely asserted needs, the fact that in his presence the president of the company indicated the need for help in procuring various ordered items by writing thereafter on Commonwealth's exhibit no. 1 the names of two independent lumber dealers, Earl Klinger and Gleason Lewis,[7] whose services were needed to procure the same, we feel that defendant, under all the circumstances, must be deemed to have constituted the Klinger Lumber Company, Earl Klinger and Gleason Lewis his agents to acquire the unstocked lumber for him. The existence of agency may be implied from attending circumstances and need not be established by specific authority. In Yezbak v. Croce, 370 Pa. 263, 268 (1952) the Supreme Court, speaking through Mr. Justice Musmanno, said at page 268:

"Furthermore, the existence of an agency does not need to be established by evidence of specific authority but may be implied from all the attending circumstances. *Sidle v. Kaufman,* supra. In *Messmer et ux. v. McLaughlin,* 122 Pa. Superior Ct. 531, 186 A. 286, the Superior Court, speaking through Judge Cunningham said: 'Authority to perform a certain act for another does not necessarily have to be established by testimony as to express words of authorization from the principal. It may, under certain circumstances, be inferred from a definite course of dealing, undertaken

---

[7] The Lewis lumber yard is located at Hills Grove, about 20 miles northeast of Williamsport in Lycoming County. Lewis shipped his lumber from there directly to defendant in Schuylkill County.

by the agent and accepted by the principal. This rule is based upon the theory that known actions, if not explained away may be consistent only with a principal-agent relationship. . . ." See also McConnell v. Williams, 361 Pa. 355 and Englerth v. Battersby, 103 Pa. Superior Ct. 103, 105 (1931), where defendant was held to have authorized employment of a surgeon whom he had never seen or contacted.

Consequently, when the Klinger Lumber Company requested Earl Klinger, an independent wholesale lumber dealer, to obtain certain specified lumber, it made such request as the agent for defendant. The testimony reveals, as stated, that Earl Klinger traveled in his own truck to Old Saybrook, Conn., to acquire the lumber for which he gave his own check for $1,877.33. He was reimbursed by the Klinger Lumber Company for this purchase, as well as for subsequent purchases of lumber in Dauphin and York Counties. When he returned to Pennsylvania from Connecticut he attempted to deliver the lumber to defendant at the Miller premises in Schuylkill County. Unable to locate defendant or the premises, he continued on to Dauphin County and unloaded the lumber at the premises of the Klinger Lumber Company onto a truck of the latter for reshipment by it to defendant. That delivery occurred in Dauphin County, and it was made to the Klinger Lumber Company which received it on behalf of defendant Hancock. Therefore, lumber was "obtained" by defendant in Dauphin County, and a prosecution for cheating by false pretenses is properly had in Dauphin County under the general rules relating to jurisdiction announced in Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348 (1903), affirmed 207 Pa. 544 (1904). Where an agent obtains property for his principal, the principal may be tried in the jurisdiction where the agent received

the property. Delivery to the agent, in the eyes of the law, is the same as delivery to the principal: Wharton, Criminal Law, 12th ed., vol. 2, §1476, and vol. 1, §324; Commonwealth v. Polin, 43 Lanc. 441, 444 (1933), Schaeffer, J.; 1 Bishop, Criminal Law, 9th ed., par. 110, pp. 65, 66; 22 C. J. S. 183; Commonwealth v. Zurcher, 45 D. & C. 555 (1942), Mercer Co., Braham, P. J., 53rd judicial district, specially presiding.

Moreover, when the Klinger Lumber Company, acting under its arrangement with defendant to secure unstocked items, caused Earl Klinger, the independent dealer, to purchase lumber for defendant at the Harrisburg Lumber Co. in Dauphin County, we think defendant "obtained" that lumber in this county. We believe Earl Klinger was acting as defendant's agent when he transported that lumber in his own truck directly from Harrisburg to defendant in Schuylkill County. Further, we feel that delivery to Earl Klinger in these circumstances was equivalent to delivery to a common carrier since both such deliveries may be predicated upon the concept of agency. In this case, Klinger is the agent of defendant (Commonwealth v. Zurcher, supra) as compared to the common carrier, which is the agent of the consignee: Commonwealth v. Karpowski, supra.

We also think our jurisdiction in this case can be sustained upon another ground. As heretofore stated, three coexistent elements must be proven to bring a case within the statute making cheating by fraudulent pretenses a crime. These elements are (1) a false pretense; (2) an obtaining of property by it, and (3) an intent to defraud. Although they must be coexistent, they need not all occur at the same time. Therefore, the crime is a continuing offense, and elements of it may be committed in more than one county,

State, or country: People v. Steffner, 227 Pac. 690, 694 (1924). Wharton, Criminal Law, 12th ed., vol. 2, §§1474, 1475, in discussing where the offense is triable states:

"Cheats by false pretenses being often, from their very nature, spread over several jurisdictions, it may become important to determine before what court the offense is to be tried. . . .

"Where a false pretense is uttered in A, and the money obtained in B, the venue may be laid either in A or B. This, in England, is finally settled by statute, which, however, is in this respect only affirmatory of the common law."

The cases which have arisen in Pennsylvania wherein jurisdiction to prosecute the offense was upheld in a county other than that where the actual physical possession of the goods was acquired, have, as we have seen, utilized legal presumptions of agency and the law of sales.

We feel no greater stress should be laid on the physical obtaining of possession of the chattel than on the uttering of the false pretense. Certainly the place where an offense is completed has jurisdiction to try the accused: Commonwealth v. Tarsnane, 170 Pa. Superior Ct. 265, 267 (1952). Further, as long as all of the elements of the offense are proven, we believe, in addition, venue can be properly laid in the place wherein the false pretense was uttered. The primary act against society which the criminal law attempts to deter by providing punishment is the false pretense. The obtaining of property thereby is merely the calculated result of that wrongful act. Why then should not the place where the pretense is uttered have jurisdiction to prosecute the offense?

The statute is aimed at persons who, by preconceived design and artifice, cheat and thereby mislead others

into transferring chattels and other property of value. One of the primary purposes of the criminal law is to protect the people within its realm, and it is the duty of the courts to maintain that protection for the people within its jurisdiction. Where an offense in the course of its completion is spread out over several jurisdictions, frequently it occurs that the jurisdiction in which the crime was consummated is not the jurisdiction wherein the real harm or wrong had its effect. In the instant case, no one in Schuylkill County was harmed. However, persons in Dauphin County were duped into giving up their property by the scheming and trickery of defendant and his associates.

We are fully aware that this is a criminal prosecution, and, therefore, subject to strict enforcement of the law in order to maintain the rights and protection afforded to accused persons. However, those rights and that protection should not be extended to the point where designing cheats and criminals are allowed to go out and prey upon the public and then, flouting the law, return to their haven. It shocks our sense of justice to require the innocent person in Dauphin County to go to the inconvenience and expense of traveling from the county where he resides and where the fraudulent pretense was made to another county to prosecute the wrongdoer. In this case, had the lumber been shipped originally to defendant's home in Erie County, where Lamont Miller falsely said all of it was taken by defendant—some was discovered in the adjoining County of Crawford—the victim would have had to go to the expense and inconvenience of traveling approximately 275 miles with his witnesses to prosecute defendant in the latter's bailiwick. We fail to see why such tender solicitude should be extended to a scheming violator of the law. As was stated by Mr. Justice Musmanno, speaking for the

Supreme Court, in Borden Appeal, 369 Pa. 517, 520 (1952) :

*"Law, in order to produce justice, must apply to objective realities of today and not to abstract visions of the past."*

Further, we think we are upheld in the position we have taken by other Pennsylvania case authority, which we have alluded to hereinabove. In conspiracy, although it is the unlawful confederacy that is the gist of the offense, and the offense can be tried in the county where the unlawful confederation was formed, jurisdiction can also be had in any county where an overt act was committed in furtherance of the conspiracy: Commonwealth v. Mezick, 147 Pa. Superior Ct. 410, 413 (1942) ; Commonwealth v. Barnes, 107 Pa. Superior Ct. 46, 59, 62 (1932). And, more especially, prosecutions for the crimes of embezzlement and fraudulent conversion may be had in *any* county where *any* part of the offense was committed. Commonwealth v. Sexton, 107 Pa. Superior Ct. 69, 71 (1932), and the cases cited supra. Both of these crimes are substantially similar to cheating by fraudulent pretenses. All of them involve a scheme, plan, design, or trick whereby property of another is unlawfully acquired, and all are susceptible of being carried out through several jurisdictions. It is *significant* that, in the *absence* of a statute, persons, who by fraud and false dealing *fraudulently convert or embezzle* property may be prosecuted in *any* jurisdiction wherein *any part* of the offense was carried out. Consequently, we feel that it is no invasion of the rights of accused persons to apply the same principle of law to the crime of cheating by false pretenses.

Defendant has filed the usual formal objections that the verdict is contrary to the law, the evidence, and the weight of the evidence, and that the trial judge erred

in overruling defendant's demurrer to the evidence. We need not deal extensively with these objections. The testimony of the witnesses presented by the Commonwealth disclosed a preconceived, well-executed plan. The facts testified to clearly prove the necessary elements to bring the case within the statute making cheating by false pretenses a crime. As stated, *defendant neither testified* on his own behalf, *nor did he call any witnesses* to rebut the testimony presented by the Commonwealth witnesses, nor was any testimony elicited on cross-examination which might have tended to exonerate him from guilt. What was said in Commonwealth v. Kimmel, 172 Pa. Superior Ct. 76 (1952) is appropriate here. There defendant was charged with conspiracy, fraudulent conversion and receiving stolen goods (nonferrous scrap) from a dishonest superintendent of the junk yard of the Armstrong Cork Company in Lancaster. In passing upon certain technical aspects of the defense, the Superior Court, speaking through Judge Reno, said at p. 79:

"However valid the contention may be in respect to The Sales Act, upon which and a related case appellant relies, it cannot prevail in this factual context. *It ignores the sordid realities of this situation.*"

We have carefully reviewed this record and can find no error in the trial of the case. The question of defendant's innocence or guilt was for the jury. It has found him guilty. There is ample evidence to support that finding and we have no right to disturb the verdict.

*Order*

And now, June 30, 1954, the motions of defendant in arrest of judgment and for a new trial are severally overruled, judgment is directed to be entered on the verdict and the district attorney is directed to call defendant for sentence.