Levy, Appellant, *v.* Leaseway System, Inc.

Argued June 10, 1959. Before RHODES, P. J., HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (GUNTHER, J., absent).

*Samuel I. Sacks,* with him *Lee B. Sacks,* for appellant.

*Albert C. Gekoski,* for appellee.

OPINION BY WATKINS, J., September 16, 1959:

This appeal arose out of a complaint in assumpsit brought by a registered professional engineer, Jacob H. Levy, trading as Towne Engineering Company, the appellant, against Leaseway System Incorporated, the appellee, for compensation based on an alleged written agreement to prepare plans and specifications for a shop and office building at 31st Street and Glenwood Ave., Philadelphia, Pennsylvania. A copy of a letter prepared by the appellant and accepted by the appellee, which is the alleged contract upon which the suit is based reads as follows:

"Subject: Shop and Office Bldg.,
31st St. and Glenwood Ave.

November 10, 1956.

"In confirmation of our verbal agreement of Nov. 7, 1956 we will prepare plans and specifications for the new Shop and Office Building to be erected at 31st St. and Glenwood Ave., Phila., Pa. for a basic fee of seven percent (7%) of the net final cost of construction of this project, our services for this basic fee will include: the preparation of preliminary plans for your approval; the preparation of detailed working drawings and specifications after approval of preliminary plans, required for the construction; furnishing 5 copies of such plans and specifications for your use; assisting in the negotiating and awarding of a general contract for the total work; and general supervision of the project during construction by periodic visits to the site as often as necessary, reporting on the progress and guarding against defects and deficiencies in the work of the Contractor but without a guarantee as to the performance of the contract by the Contractor; and the checking and approval of the Contractors requisition for payments.

"The basic fee is to be based upon the net final cost of construction, which net cost includes the cost of the entire work including labor, materials and use of equipment but not including cost of land or the engineering fee. This fee is compensation for our services and 70% of the total fee is to be paid upon completion of the contract plans and specifications, the balance of the fee to be paid in monthly payments until the aggregate of all payments equals the total amount due or 7% of the total cost of the construction of the project. Should the execution of the work planned and designed, or any part, be abandoned or suspended the engineer is to be paid in proportion an amount of the basic fee for the

services rendered up to the time of abandonment or suspension.

"The return of one signed copy, as noted below, will be a confirmation of your verbal authorization to proceed with our engineering services as noted above, and preliminary plans will be prepared as soon as possible for your consideration."

The complaint avers that the plans and specifications were prepared in accordance with information furnished by the appellee; that they were completed and delivered to the appellee; that they were submitted for bids and that the lowest bid received was $59,555 so that the sum claimed to be due was $2,918.20.

The appellee denies that the letter of November 10, 1956 incorporated the entire agreement, but averred that the plans were never accepted by the appellee; that it was orally agreed between the parties that the total cost of the construction would not exceed $30,000; that the letter of November 10, 1956 was not the complete contract but merely set forth the fee schedule; that the appellee was unable to ascertain if the appellant had complied with the contract requirements until it received bids ranging from $87,585 to $59,555; that the appellee then rejected the plans and requested the appellant to comply with the agreement and prepare plans for a $30,000 building; that on February 16, 1957 the appellant submitted new plans of construction, estimated to cost $41,000 which the appellee also rejected. A copy of the letter of February 16, 1957 submitting the new plans reads as follows:

"In connection with our discussion yesterday, we are enclosing a print showing proposed revision to the plans furnished you on January 14. Basically the plan is the same, however the total area of building is smaller, the net size of the shop being 30 x 56, thus permitting a change in design of framing which re-

duced the cost. We estimate the cost of the building construction to be approximately $36,000 and the cost of the outside work consisting of yard paving, chain link fence and driveways to be $5,000. These estimated figures are based upon materials equal or similar to those originally specified. The plumbing, heating and electrical work are basically the same as before, except reduced to conform with the reduced overall building area. The estimated costs might be somewhat reduced by the use of inferior materials or omission of needed facilities, but the increased cost of maintenance and operation will be far greater than any apparent reduction in first cost.

"In our discussion you mentioned a length of shop to be at least 60 feet, and although this length was never contemplated having started first with 30 ft. and then increasing to 54 ft. we investigated the possibility. The pencil line on the print indicates the extreme end of the building and of course reduces the turning area between building and fence line. The increase in cost would be negligible in this case as the increase in floor area by this small amount will not affect the major items of cost, which merely proves our point that cost area ratios are misleading.

"As suggested by the writer yesterday, have one of the original bidders work up a price based on this preliminary revision, as a check on our estimate of construction cost."

This case was originally brought in the Court of Common Pleas, when, at the conclusion of the pleadings, the plaintiff's motion for judgment on the pleadings was denied, and the case transferred to the Municipal Court. The court below at the trial refused to receive any evidence as to construction cost limitation on the ground that such evidence was outside the letter of November 10, 1956, which embodied the whole

contract, and was inadmissible under the parol evidence rule. Both sides rested and the court below directed a verdict in favor of the appellant.

The appellee filed motions for a new trial and judgment n.o.v. The Court en banc, after argument, dismissed the judgment n.o.v. but with the trial judge concurring, granted the motion for a new trial. Hence this appeal.

"The parol evidence rule . . . provides that where parties to an agreement commit their undertakings to a writing with the intention that it shall formally and comprehensively evidence the terms of their agreement, the writing, when executed by the parties, cannot thereafter be made subject to parol alteration, contradiction, or variance by way of agreements or understandings had prior to or contemporaneously with the execution of the writing." *International Co. v. Hachmeister, Inc.*, 380 Pa. 407, 110 A. 2d 186 (1955). The question as to whether the parol evidence rule is applicable is to be determined by the court and depends on whether the writing "formally and comprehensively evidence the terms of their agreement." *O'Brien v. O'Brien*, 362 Pa. 66, 66 A. 2d 309 (1949).

"The question whether parol evidence will be admitted for the purpose of showing that the parties to a written contract for an architect's services had agreed that the structure to be designed should be such that it could be erected within a maximum cost limitation necessarily depends upon the terms of the written contract in suit, that is, the extent to which that contract appears, on its face, to be a complete and unambiguous integration of the agreement." 49 A.L.R. 2d 680.

In the great majority of the cases where the question has been raised, the evidence has been held admissible usually on the ground that the written contract failed to disclose the parties' intention as to the cost

of the structure contemplated and that such contemplated cost was an element which must have entered into the negotiation. See collection of cases in 49 A.L.R. 2d 680. See also: *DeHoff v. Scott,* 69 Pa. Superior Ct. 9 (1918); *Ritter v. Harrisburg School Dist.,* 291 Pa. 439, 140 A. 126 (1928). This certainly is the common sense rule because most people contemplating a construction project of any kind have in mind a building budget within which the construction terms must be limited.

It has been held that where it can be shown by competent evidence that no single writing embodies or was intended to embody the whole of the parties' understanding, the parol evidence rule has no application. *International Co. v. Hachmeister, Inc.,* supra. Where a written contract admittedly does not contain the full and exact agreement of the parties, parol evidence is admissible to establish the terms of the agreement. *Yezbak v. Croce,* 370 Pa. 263, 88 A. 2d 80 (1952). Parol evidence has been held to be admissible as part of the surrounding circumstances in ascertaining the intention of the parties as to the duration of an agreement. *Rosenfeld v. Rosenfeld,* 390 Pa. 39, 133 A. 2d 829 (1957).

The evidence in this case clearly points up the fact that the letter of November 10, 1956 did not contain the full and exact agreement of the parties. The appellant's complaint discloses that the preparation of plans and specifications provided for in that letter were prepared entirely from information secured outside of the alleged contract and these plans and specifications were subject to the approval of the appellee and never received such approval. The letter of February 16, 1957, which the court below denied admission indicates clearly that a discussion concerning a limitation of cost had been held both before and subsequent to the writing of the so-

called letter contract and nothing concerning this discussion was included in the contract. The appellee's contention that the letter of November 10, 1956 was merely for the purpose of setting forth the appellant's fee schedule makes sense because the matter of the size, type and style of building, the kind, quantity and quality of material and the cost of construction, which almost necessarily had been connected with their discussion, were never indicated in the writing. It was necessary to go outside of the agreement in order to obtain a cost of construction to which to apply the fee percentages set forth in the letter.

We have held that where one directs an architect to make plans and specifications and stipulates that the cost of construction shall not exceed a definite sum, the architect cannot recover compensation for the work unless the building can be erected for the sum specified. *DeHoff v. Scott*, supra. In the *DeHoff* case such limitation was not contained in the written contract but the plaintiff admitted that such an oral agreement was made. In the instant case the appellant denies there was such an oral agreement but his letter of February 16, 1957 indicates clearly that the matter was discussed, or he would not have made the modification in the plans and specifications. We agree with the court below that: "The agreement relied on by the plaintiff in this case is not a complete, integrated contract. It does not set forth any of the details with respect to the contemplated construction, such as the type of building materials to be used, the size of the building, or the contemplated cost. The latter item is particularly important because the plaintiff's fee is directly based on the cost of the building. It is significant that the fee claimed by the plaintiff cannot be determined by the agreement itself. It depends on evidence outside of the agreement, to wit, that the plans were submitted to con-

tractors and that the lowest bid received was in the amount of $59,555."

Order affirmed.