Keller & Voelker, Inc., Appellant, *v.*
Kellett Aircraft Corporation.

26

Argued March 21, 1960. Before RHODES, P. J.,
GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and
MONTGOMERY, JJ.

*Warren W. Holmes,* with him *Zink, Shinehouse &
Holmes,* for appellant.

*George P. Williams, III,* with him *Orr, Williams &
Baxter,* for appellee.

OPINION BY ERVIN, J., April 13, 1960:

This is an action in assumpsit by plaintiff, Keller & Voelker, Incorporated, to recover from the defendant, Kellett Aircraft Corporation, fees for the preparation of certain preliminary plans and final plans and specifications and the cost of certain test borings, relating to a factory and office building proposed to be erected by the City of Philadelphia and the Philadelphia Airports Improvement Authority at the North Philadelphia Airport and to be occupied by defendant as a lessee of the City. The case was tried before President Judge FRANCIS SHUNK BROWN, JR., sitting without a jury. The plaintiff's claim was for $19,415.00. The court below, by a court in banc, after dismissing plaintiff's exceptions, entered judgment for the plaintiff against the defendant in the sum of $1,000.00. The plaintiff appealed. The facts are as follows:

On June 6, 1955 plaintiff and defendant, through their representatives, discussed the possibility of having a new manufacturing plant constructed for defendant. Plaintiff was informed by defendant about its financial situation, and that it would be essential that financing be obtained. Subsequently, defendant approached The Philadelphia Airports Improvement Authority in connection with the erection of the plant at the Northeast Airport in Philadelphia and the undertaking of the construction by the Authority. It was necessary that drawings be made in order to inform the Authority of the requirements that defendant anticipated. As a result of discussions between the parties, an agreement was made by them as set forth in a letter written by plaintiff and approved by defendant. That letter, dated June 30, 1955, stated that "We . . . are proceeding with preliminary studies even though our [plaintiff's] contract with the City of Philadelphia will require the normal two or three weeks before it is finalized.

"Although we anticipate no difficulties or delays in the signing of the contract, we feel that as a matter of good business practice we should be partially protected for the work we are now doing should the City decide not to proceed, which is most unlikely.

"We therefore suggest that should such an unlikely situation develop, you will then compensate us for work that we have done at the rate of one-half the normal per diem fee . . ., but not to exceed $1000. in any event.

"If this is agreeable to you, we would appreciate your initialing one copy of this letter and returning it to us."

On July 5, 1955 Mr. Keller, plaintiff's president, sent a letter to Mr. Inwood, in his capacity as executive director of the Authority, wherein plaintiff proposed to "supply architectural and engineering services" to the Authority for a fee of $7\frac{1}{4}\%$ and after a meeting with Mr. Inwood attended by him and by Mr. Voelker at which Mr. Inwood stated that 6% was the largest fee acceptable to the Authority, Mr. Keller wrote Mr. Inwood again, reducing the fee to the Authority to the permissible maximum of 6%. Thereafter, on a date not definitely established, plaintiff executed and delivered to the Authority a formal contract in which it agreed to render "to the Authority all of the architectural and engineering services necessary or proper to the construction of . . ." the proposed plant for a fee of 6% of the cost of construction. This agreement was never signed by the Authority. The plans and specifications prepared by plaintiff carried the notation "Contract No. AANE-102", which was the Authority's contract number, and the specifications expressly stated on their face that they had been "Prepared for Philadelphia Airports Improvement Authority, Louis R. Inwood, Executive Director."

On September 19, 1955 plaintiff wrote to defendant that "The moment you sign the lease-arrangement with

the Philadelphia Airport Improvement Authority we will go forward with the design and construction." On October 4, 1955, plaintiff wrote to defendant that "We understand that you desire to limit any possible cancellation fees for engineering work to $5000.00. Sometime before this amount of engineering has been done we will have several reputable builders give their tentative estimates based on our preliminary drawings and specifications."

On October 5, 1955 a letter was written by the Chairman of The Philadelphia Airports Improvement Authority to plaintiff, which stated that "This is to advise you that The Philadelphia Airports Improvement Authority cannot legally enter into an agreement with your firm for the plans and specifications for the Kellett Aircraft Corporation building until the contract between the Authority and the City has been ratified by the Council.

"I personally foresee no serious difficulties in having this done within a reasonable length of time.

"The Authority has discussed the matter and has determined through a vote of its membership to undertake the erection of a building for the Kellett Aircraft Corporation. I regret that I cannot contract for your services now, but if you desire to proceed with the plans and specifications at your own risk, I can assure you that if the contract is ratified by the Council I will be very happy to enter into an architectural contract with you if it continues in its present form."

On October 11, 1955 defendant's president wrote plaintiff that "I have your letter of October 4, 1955, in the above matter, but find that it does not confirm my understanding of our discussions on the subject of the limitation of Kellett's liability for the fees of your firm if the contracts are not let for the construction of our proposed plant at Northeast Airport.

"As you know, the proposed agreement between Kellett and the City provides that if Kellett does not approve construction contracts that agreement may be terminated, in which event Kellett is required to reimburse the City for the amount paid your firm for services by The Philadelphia Airports Improvements Authority." That letter goes on to state that defendant was proceeding on the assurance by plaintiff as to the maximum construction cost and completion date of the proposed building, and that if those requirements were not met, defendant would be forced to disapprove the proposed construction contracts and cancel the agreement with the City. It further says that the agreement with the City provides that defendant is to approve the proposed service contract between the Authority and plaintiff, and since the Authority is unwilling to limit the amount of compensation in the event that contracts are not let, defendant would be willing to approve a contract between plaintiff and the Authority which does not contain a limitation, if plaintiff would agree with defendant to certain conditions. These conditions were the performance of all services called for by the proposed contract between plaintiff and the Authority, and that in the event that defendant does not approve the construction contracts, and the agreement between defendant and the City is terminated, plaintiff "will limit its claims to be compensated by Kellett, the City or by The Philadelphia Airports Improvement Authority to the total sum of $5000.00" plus the cost of borings and other preparatory activities.

Another writing dated October 12, 1955, which was executed on behalf of both parties, states that it was a modification or explanation of the letter of October 11, 1955; that plaintiff would furnish preliminary plans and specifications in sufficient detail to permit builders to predict costs and submit bids; that if defendant was not satisfied, work could then be stopped and the

engineering fee would be limited to $5,000.00, and if defendant was "satisfied and gave instructions to proceed", the plans would then be elaborated and detailed.

It is noteworthy that plaintiff's letter of October 12, 1955 did not take issue with Kellett's assertion of the day before that its obligation ran to the City only, and moreover, the plaintiff asked defendant for no assumption of responsibility for plaintiff's fees if the City, rather than Kellett, refused to proceed with the construction of the plant. Those omissions can only be explained on the ground that plaintiff continued, as it had from the beginning, to consider the Authority, not Kellett, to be its client, and that it remained confident that the City would carry through to a conclusion.

On November 17, 1955 defendant authorized plaintiff to complete the drawings and specifications.

An agreement was entered into on November 1, 1955 between defendant and the City of Philadelphia for the construction of a building at the North Philadelphia Airport to be leased to defendant. This agreement contained the provision that "the City's obligations hereunder are subject to the condition that such arrangements shall be consummated after due compliance with all of the requirements of the Ordinance approved December 31, 1953 pursuant to which the Authority was organized." This ordinance provided: "No project shall be undertaken except with the written approval of . . . the City of Philadelphia. No such written approval . . . shall become effective until it has been specifically authorized by the Council of the City of Philadelphia." No such authorization was given by the Council.

From this evidence the court below concluded that the plaintiff's services were rendered to the City of Philadelphia. Defendant did not promise, contract or agree to pay plaintiff anything, except sums not to ex-201, 203; O'Neill v. Atlas Automobile Finance Corpo-

ceed $1,000.00 in the event the City decided not to proceed.

Appellant argues that the court below violated the parol evidence rule in considering evidence other than the letters between the parties. All of the letters except the first, that of June 30, 1955, were determined by the court below to be subject to the condition that the project must first be undertaken by the City before the defendant would become liable directly to plaintiff. None of the letters purport to be a comprehensive statement of the contractual relations between the parties. The argument in support of the largest portion ($13,-000.00) of its claim is to the effect that an undertaking by defendant to pay plaintiff is to be "implied" from the letter of November 17, 1955. The parol evidence rule does not apply to this situation.

In the case of *Levy v. Leaseway System, Inc.,* 190 Pa. Superior Ct. 482, 488, 154 A. 2d 314, we recently said: "It has been held that where it can be shown by competent evidence that no single writing embodies or was intended to embody the whole of the parties' understanding, the parol evidence rule has no application. International Co. v. Hackmeister, Inc., supra. Where a written contract admittedly does not contain the full and exact agreement of the parties, parol evidence is admissible to establish the terms of the agreement. Yezbak v. Croce, 370 Pa. 263, 88 A. 2d 80 (1952)."

In *Calderoni v. Berger,* 355 Pa. 418, 421, 50 A. 2d 332, our Supreme Court, speaking through Mr. Justice STEARNE, said: "There was an interrelation between the writings and the parol testimony which required the action of the jury to determine what was the contract between the parties: Philadelphia to use v. George W. Stewart, 201 Pa. 526, 530, 51 A. 348; Dougherty v. Proctor & Schwartz, Inc., 317 Pa. 363, 366, 176 A. 439; Wolf v. La Roche Brothers, Inc., 71 Pa. Superior Ct.

ration, 139 Pa. Superior Ct. 346, 353, 11 A. 2d 782. See also: 3 Williston, Contracts, section 633; Wigmore on Evidence, Vol. 9, section 2556, p. 524; 17 C. J. S. section 619, p. 1289."

The findings of the trial judge, having been affirmed by the court in banc, have the force and effect of a jury's verdict, and upon review here defendant is entitled to have the record read in the light most favorable to its position, with all evidence contrary to the findings of fact beneficial to defendant being wholly disregarded: *Merit Motors, Inc. v. Bartholomew*, 179 Pa. Superior Ct. 576, 118 A. 2d 277; *Berberick v. Kucera*, 180 Pa. Superior Ct. 355, 119 A. 2d 593.

Our function on appeal is to determine whether those findings were the product of any capricious disregard of the evidence: *Williams v. New Bethlehem Burial Service*, 167 Pa. Superior Ct. 364, 74 A. 2d 677.

We have carefully reviewed the record and believe that the trial court reached a correct conclusion.

Because of our disposition of the case upon this issue, it will be unnecessary for us to consider the question of whether the appellant violated the laws of this Commonwealth regulating the practice of architecture and engineering.

Judgment affirmed.