# Daily Industries, Inc. v. Transport Trailer Service, Inc.

*Clyde W. McIntyre,* for plaintiffs.
*Ronald M. Katzman,* for defendant.

DOWLING, *J.*, January 8, 1979—Plaintiffs' law suit backfired when the jury not only rejected their action but found for defendant on its counterclaim. The recoil has produced the instant motion with the verdict loser wanting another shot at the jury.

The case arose out of a transaction between the parties wherein plaintiffs, Daily Industries, Inc., Daily Express, Inc., and Penbrook Hauling Company, Inc.[1] purchased from defendant, Transport Trailer Service, Inc., 58 flatbed trailers. Shortly after delivery in the spring of 1974, it was discovered that the weight bearing capacity of the trailers supplied did not meet plaintiffs' requirements. The responsibility for the nonconformity was never clearly established. Various discussions and meetings resulted in an agreement evidenced at least in part by a writing dated November 8, 1974

---

1. Plaintiffs were all corporately related; Daily Industries being the holding company for the other two named plaintiffs.

and signed by Robert Wertz and John Seick, vice-presidents of Daily and Transport, respectively, whereby Daily traded in the trailers for new ones with greater strength for an additional agreed price of $47,125. When the last of the new trailers were delivered, instead of prompt payment Transport got a prompt complaint for damages, occasioned by the earlier delivery on the nonconforming flatbeds. The jury went along with the mood of alacrity by a prompt verdict for defendant in the amount of $47,125.

Plaintiffs' heaviest salvo in their quest for a rerun is fired at the court's alleged violation of the parol evidence rule. It was Transport's position that plaintiffs' claims for damages were barred by a legal settlement allegedly part of a trade-in agreement and, at trial, a number of defendant's witnesses were permitted to testify to circumstances surrounding the agreement and the writing of November 8, 1974. Plaintiffs, of course, strenuously objected, alleging that any testimony as to the circumstances surrounding the agreement or its import were barred by the parol evidence rule.

Wigmore[2] makes it very clear that the rule "is in no sense a rule of Evidence," but after this perspicacious pronouncement as to what it is not, he lapses into copious obscurity in describing what it is. A compendious summary had to await the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §1-101 et seq. [see now, 13 Pa.C.S.A. §1101 et seq.], which is appropriate since a sale of goods occurred. The code's version of the parol evidence rule is found at 12A P.S. §2-202:

---

2. IX Wigmore On Evidence, §2400.

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade (section 1-205) or by course of performance (section 2-208); and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

The comments indicate that this section rejects:

"(a) Any assumption that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon; . . . (c) The requirement that a condition precedent to the admissibility of the type of evidence specified in paragraph (a) is an original determination by the court that the language used is ambiguous."

Parol evidence is thus admissible to explain and supplement a writing when the evidence shows that it was not intended to state the entire agreement. In Pacific Indemnity Co. v. McDermott Brothers Co., 336 F. Supp. 963 (M.D. Pa. 1971), the court held that a written sales order was not intended as a complete statement of the agreement of the parties. Parol evidence was permitted to supplement the writing on the issue of who had agreed to purchase insurance.

Whether or not a written contract was intended to

encompass the parties' entire agreement is a question for the court and in answering that question the court must determine whether the writing "'appears, on its face, to be a complete and unambiguous integration of the agreement.'" Levy v. Leaseway System, Inc., 190 Pa. Superior Ct. 482, 487, 154 A. 2d 314 (1959).

We should first note that the writing of November 8, 1974 contained no integration clause; there was no express representation that the writing limned the entire agreement. In addition, the forms on which the contract is written are obviously not adopted for spelling out a comprehensive legal agreement. As introduced into evidence, the writing consisted of several printed sheets labeled "Sales Order," "Supplemental Sales Order," and "Quotation and Specification Sheet." The sheets contained a number of blank areas designated "Description of Equipment," "Other Specifications," and "Terms," with the latter containing only blanks for cash price, tax, and total price. In none of these areas would it appear appropriate to describe a legal settlement between Daily and Transport.

Any doubts about integration of the contract are removed by plaintiffs' own testimony. Daily Express' vice-president, Robert Wertz, one of the signatories to the contract, characterized the writing as follows:

Q. "And in order to get the PIH trailers, what terms were worked out?"

A. "That Daily Express would turn in the old trailers and an additional sum of $774.50 would be paid per trailer."

Conspicuously absent from the writing, however, is any detailed reference to a trade-in of the original

trailers. Though there is a handwritten reference to "trade-in trailers" under "Specifications," nowhere in the contract do the specifics of the trade-in arrangement themselves appear: the number of trailers to be traded, place, time and conditions of return are all omitted. Mr. Wertz' characterization of the trade-in arrangement as an integral part of the November 8 contract and his subsequent detailing of the return process, therefore, necessarily amount to a tacit admission that the writing was far from complete. "'Where a party . . . seeking to have a written agreement enforced according to its terms, admits in his own trial testimony that the agreement in writing did not fully and completely state the entire agreement between the parties, then parol evidence is admissible to explain and supplement such written agreement.'" Yuhas v. Schmidt, 434 Pa. 447, 456, 258 A. 2d 616 (1969); Pacific Indemnity Co. v. McDermott Bros. Co., 336 F. Supp. 963, 970 (M.D. Pa. 1971). The writing in question here obviously did not represent an integrated agreement and parol testimony was therefore properly admitted.

During his opening statement, defense counsel made several comments to which plaintiffs took exception. Though the opening was not recorded, discussion at side-bar which was recorded indicates that the statements included references to plaintiffs as "big business" and an accusation that plaintiffs had "conned" defendant. The court agreed that the statements were argumentative and not proper for an opening statement but refused to withdraw the jury, instead issuing the following caution:

The court: "The purpose of the opening, ladies and gentlemen, is to explain to you what testimony

they hope to present. Then when it is all over in the summation or final arguments, counsel can ask you to draw certain inferences depending upon the evidence. I would ask you to disregard the remarks about big business and conning people and pulling the wool over their eyes. We don't know what the testimony is to be yet. I am not going to withdraw a jury. You disregard those remarks."

Withdrawal of a juror because of remarks of counsel is within the sound discretion of the trial judge: McCune v. Leamer, 383 Pa. 434, 119 A. 2d 89 (1956). While counsel may have been less than dispassionate in his choice of verbs and modifiers, his statements were made in the context of describing evidence later to be presented, a proper function of the opening. This was not a calculated attempt to mislead and its prejudicial effect was in all likelihood slight. In view of these considerations, we deem the cautionary instruction an adequate remedy.

A second request for withdrawal of the jury was made during defendant's closing. There, objection was made to counsel's suggestion that an unfavorable inference could be drawn from plaintiffs' failure to call certain witnesses. Specifically, it was observed that Mr. Lindsay and Mr. Patti, plaintiffs' employes, were present at a meeting on October 31 but were never called to testify thereto. The applicable legal principle is stated in Williams v. Philadelphia Transportation Co., 415 Pa. 370, 378, 203 A. 2d 665 (1964): "'Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him.'" Plaintiffs

argue that the meeting in question was not important to their case and that Messrs. Lindsay and Patti were available to both sides. No argument was ever made that the October 31 meeting was legally or logically irrelevant. Given that it had some significance in the case, the weight to be assigned it was clearly a matter for the jury. If the jury found the meeting inconsequential, any unfavorable inferences drawn from a failure to bring forth witnesses would be similarly inconsequential. As plaintiffs' employes, the two witnesses were more subject to plaintiffs' control than defendant's. In any case, the inference is not mandatory but one which the jury *may* draw in the appropriate situation: Williams v. Philadelphia Transportation Co., supra. Plaintiffs' counsel had ample opportunity in his own closing to convince the jury not to come to the suggested conclusion.

In their requested points for charge, plaintiffs included an excerpt from the Restatement of Torts outlining the elements of negligent misrepresentation, which point was refused. Of course, no instructions should be given on questions which are not properly raised in the pleadings or supported by the evidence. As expressed in the case of Crisman v. Southwest Central Rural Electric Cooperative Corp., 397 Pa. 414, 418, 155 A. 2d 621 (1959): "A trial judge is not expected to pour words on the wheel of an empty millstream." Negligence was pleaded but the proof was sketchy and confusing. Though it was established that Daily had been supplied with an incorrect weight bearing capacity figure, the source of the error was never determined and there was no testimony as to the standard of care required of defendant in cases of this kind.

At the request of defendant, the jury made special

findings in reaching its verdict. The crucial question was:

Question 1:

Do you find that the parties entered into an agreement to settle Daily's claims which it asserted after August, 1974?

Yes _____ No _____

If you answer Question 1 "Yes," plaintiff cannot recover and you should not answer any further questions.

Since the jury did answer "Yes," it is apparent that the jury never would have reached the negligence issue even had it been submitted.

Having weighed plaintiffs' assignments of error and finding them insufficient, we enter the following

## ORDER

And now, January 8, 1979, plaintiffs' motion for a new trial is denied.